UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUSSEIN AL QARI,

        Plaintiff,        Case No. 21-cv-10650

v.        Paul D. Borman
        United States District Judge

AMERICAN STEAMSHIP COMPANY,

        Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO DETERMINE WHETHER PLAINTIFF MAY PRESENT EVIDENCE AT TRIAL IN SUPPORT OF CLAIM TO RECOVER PLAINTIFF'S NURSE CASE MANAGER CHARGES AS CURE AND FOR PUNITIVE DAMAGES (ECF NO. 17) AS PROCEDURALLY IMPROPER AND PREMATURE**

This is a maritime personal injury action arising from injuries Plaintiff Hussein Al Qari alleges he suffered while working as a Steward's Assistant aboard Defendant American Steamship Company's bulk carrier, the *M/V H. Lee White*. Now before the Court is Plaintiff's Motion to Determine Whether Plaintiff May Present Evidence at Trial in Support of Claim to Recover Nurse Case Manager Charges as Cure and for Punitive Damages (ECF No. 17). Defendant filed a Response in opposition (ECF No. 18), and Plaintiff has filed a Reply brief (ECF No. 21).

For the reasons that follow, the Court DENIES Plaintiff's motion as a procedurally improper and premature summary judgment motion.

## I.  BACKGROUND

Plaintiff Hussein Al Qari was employed as a Steward's Assistant aboard Defendant American Steamship Company's vessel, the *M/V H. Lee White*. Plaintiff alleges that on November 5, 2020, he was climbing a flight of stairs from one level of the vessel to another, while carrying a box containing six jars of coffee grounds. The box started to slip and Plaintiff let go of the handrail, lost his balance, and fell. Plaintiff claims he was seriously injured as a result of falling down the stairs.

On March 24, 2021, Plaintiff filed this lawsuit against Defendant based on his November 5, 2020 fall and injuries, asserting claims for (1) Jones Act Negligence, (2) Unseaworthiness, and (3) General Maritime Law – Intentional/Negligent Failure to Provide Maintenance and Cure. (ECF No. 1, Compl.)

Defendant states that, shortly after the accident, it assigned to Plaintiff a professional nurse case manager from Medical Solution Services (MSS), which serves as Defendant's remote medical advisory service. Nikki Cremeans, MSS Care Coordination Manager, was Plaintiff's assigned nurse case manager.

On December 7, 2020, Plaintiff's counsel sent a letter to Nurse Cremeans, advising that he represented Plaintiff and stating:

2

> Please do not contact [Plaintiff] again. I will send a copy of this letter to American Steamship Company and request they reimburse Laura Busen a [sic] local Care Coordinator Manager. She is more familiar with our Michigan doctors.

(ECF No. 18-1, PageID.241.)

Plaintiff states that Ms. Busen first met with Plaintiff on December 21, 2020 (ECF No. 14-12, PageID.128), and that she has worked regularly with Plaintiff since then. (ECF No. 17, PageID.201.)

On January 31, 2021, counsel for Defendant responded to the December 7, 2020 letter to Nurse Cremeans, stating, in relevant part:

> We are in receipt of your letter, dated December 7, 2020, addressed to Nikki Cremeans, Care Coordination Manager for Medical Solution Services ("MSS")…..
>
> In your letter, you advise Ms. Cremeans that you represent Hussein Al Qari. You instruct her not to contact him again, and indicate some future intent to ask American Steamship Company to reimburse a care coordination manager of your choosing.
>
> As you may know, MSS serves as American Steamship Company's remote medical advisory service. In addition to that function, MSS also provides nurse case management and care coordination for mariners who may fall ill or be injured while aboard American Steamship Company vessels. This is the role that Ms. Cremeans was fulfilling with respect to Mr. Al Qari's care. She would coordinate his visits with his doctors, ensure that he was able to and did attend his appointments, and then help facilitate the reproduction of medical records relating to those appointments. If Mr. Al Qari (or any other mariner, for that matter) needed a referral to another physician or provider, Ms. Cremeans would have been in a position to help facilitate the referral.

3

> American Steamship Company views nurse case management and care coordination as one of the most important and effective methods of ensuring that mariners allegedly ill or injured receive the care they need. The involvement of the care coordination manager allows the mariner to focus on his or her recuperation, rather than the logistics of setting appointments. We understand, however, that we cannot force Mr. Al Qari (or any other mariner) to accept this assistance. To that end, if it is truly Mr. Al Qari's intention to forgo nurse case management and care coordination, we will abide by your instruction that MSS personnel no longer contact Mr. Al Qari. **The expense of a nurse case manager and care coordinator, however, is not a component of cure, in that the nurse case manager and care coordinator is not involved in the provision of medical treatment. As such, American Steamship Company will not pay for or reimburse the cost of a nurse case manager or care coordinator handpicked by a mariner's attorney. (If you have legal authority that you believe suggests that American Steamship Company would be legally obligated to pay for a nurse case manager or care coordinator of your choosing, please submit that authority to us and we will consider it in due course.)**

(ECF No. 18-2, PageID.243-44 (emphasis added).)[1]

---

[1] The Sixth Circuit Court of Appeals has explained:

> Maintenance refers to a shipowner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill while in service of the ship, while cure alludes to the duty to provide necessary medical care and attention. A shipowner is liable to pay maintenance and cure to the point of maximum cure, that is, when the seaman's affliction is cured or declared to be permanent. Finally, a shipowner must also pay a stricken seaman's unearned wages at least so long as the voyage is continued.

Ms. Busen began submitting invoices to Defendant. On March 31, 2021, Plaintiff's counsel emailed Defendant's counsel, stating that he expects Defendant to pay for Ms. Busen's case management services provided to Plaintiff. (ECF No. 18-3, PageID.246-47.) Defendant's counsel responded that same day stating, in part, that:

> **The nurse case manager is not providing any medical treatment, and as such, does not come within the scope of the cure obligation. If you disagree, I invite you to point me to the law that holds otherwise**. In that same vein, I invite you to point me to what medical treatment she herself has provided to Mr. Al Qari to move him from his current condition to medical improvement….

(*Id.* (emphasis added))

Defendant's counsel re-affirmed this stance in a June 9, 2021 email to Plaintiff's counsel, stating:

> [W]e have considered the matter, which included conducting a review of the applicable law, and determined that American Steamship Company is not required to pay LL Busen Consulting's invoices. As we have indicated on a number of occasions, your nurse case manager is not providing medical treatment, and so any services that she might be providing fall outside the scope of the cure obligation….

(ECF No. 18-4, PageID.249.)

---

*Musleh v. American Steamship Co.*, 766 F. App'x 214, 216 (6th Cir. 2019) (quoting *Blainey v. Am. S.S. Co.*, 990 F.2d 885, 887 (6th Cir. 1993) (citations and quotation marks omitted)).

On September 29, 2022, Plaintiff filed the instant motion "request[ing] that the Court order that the Plaintiff may present evidence of the cost of his nurse case manager services to the jury in this case, and that the jury may award him the cost of such services as part of a cure award in its discretion as well as any punitive damages and attorneys fees to which he may be entitled." (ECF No. 17.) While Plaintiff asserts that that he is not seeking summary judgment on the issue of whether an injured seaman is entitled to be awarded nurse case manager costs as part as a cure award, he states that this is a "legal issue," and that it "will have to be resolved at some point in this litigation, and [Plaintiff] believes that it would be beneficial to all parties and to judicial economy for the Court to address this issue now." (*Id.*)

Defendant filed a Response in opposition to Plaintiff's motion on October 13, 2022. (ECF No. 18.) Defendant first states it is unclear what relief Plaintiff is seeking through his motion, or even procedurally what kind of motion it is, questioning whether it is a motion in limine, or a motion for partial summary judgment. Defendant argues that the expense of a nurse case manager is not a component of the cure obligation under general maritime law, and that even if it was, Defendant fulfilled its obligation by providing nurse case management services to Plaintiff, and Plaintiff was not entitled to reject those services and rely on and seek reimbursement for a replacement of his own choosing.

6

On November 7, 2022, Plaintiff filed a Reply brief, stating that his motion is "asking that the Court make a legal determination that nurse case manager services are a part of cure, at least based on the facts of this case," and that "the Court will have to make [this legal determination] at some point in this case" and "it is in both parties' best interests to resolve the legal issue sooner, rather than later." Plaintiff requests "that the Court make the determination now so that both parties can have a better roadmap as to what the evidence and legal claims in this case will be." (ECF No. 21.)

## II. DISCUSSION

As Defendant correctly states in its Response brief, it is not clear, procedurally, what kind of motion Plaintiff seeks relief under. Plaintiff failed to identify the basis for his motion or cite any Federal Rule of Civil Procedure in support of the relief he seeks. He contends that his motion is not one for summary judgment, but then asserts that he is "asking that the Court make a legal determination that nurse case manager services are a part of cure [as sought in Count II in Plaintiff's Complaint], at least based on the facts of this case." (ECF No. 21, PageID.268) (ECF No. 17, PageID.214.) This argument and claim for relief belongs in a motion for summary judgment. As the Sixth Circuit Court of Appeals explained, "a mechanism already exists in civil actions to resolve non-evidentiary matters prior

7

to trial – the summary-judgment motion." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2003).

Eastern District of Michigan Local Rule 7.1(b)(2) provides that "[a] party must obtain leave to court to file more than one motion for summary judgment. For example, a challenge to several counts of a complaint generally must be in a single motion." Accordingly, Plaintiff is allowed to file only one motion for summary judgment in this case.

Just days before Plaintiff filed the instant motion, the parties filed a stipulated order stating that they were continuing in their efforts to obtain deposition testimony of fact and expert witnesses, and that they therefore "request additional time to obtain and review the transcripts of their respective liability experts in order to submit a thorough and well-reasoned dispositive motion and/or *Daubert* motion…." (ECF No. 15, PageID.181.) The most recent stipulated scheduling order called for dispositive motions to be filed by December 1, 2022. (ECF No. 20.)

Pursuant to that scheduling order, on December 1, 2022, Plaintiff filed a motion for partial summary judgment as to liability and causation under the Jones Act and unseaworthiness. (ECF No. 24.) Plaintiff did not address the issue of whether services provided by a nurse case manager are part of the cure obligation.

That same day, Defendant filed a motion for summary judgment on all of Plaintiff's claims, including on Plaintiff's claim in Count II of his Complaint for maintenance and cure benefits, addressing the very issue raised in the instant motion. (ECF No. 28.) Defendant argues that Plaintiff cannot establish that he has not received all of the maintenance and cure benefits to which he may be legally entitled, and that the services provided by Plaintiff's nurse case manager are outside the scope of the cure obligation. (*Id.* PageID.623-28.)

Plaintiff has filed a response in opposition to Defendant's motion for summary judgment, arguing that he has established that he is entitled to cure benefits for Ms. Busen's nurse case manager services. (ECF No. 31, PageID.810-13.) On January 31, 2023, Defendant filed a reply brief. (ECF No. 38.)

Thus, the legal issue Plaintiff prematurely raises in the instant motion will be addressed when the Court decides Defendant's properly filed motion for summary judgment. Plaintiff is allowed to file only one motion for summary judgment, which he did on December 1, 2022. (ECF No. 24.) The Court therefore does not construe Plaintiff's instant motion as a motion for partial summary judgment, and, as Plaintiff has identified no other basis for his motion, the motion is denied as procedurally improper or premature.

9

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Determine Whether Plaintiff May Present Evidence at Trial in Support of Claim to Recover Plaintiff's Nurse Case Manager Charges as Cure and for Punitive Damages (ECF No. 17) is DENIED as procedurally improper and premature.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: February 1, 2023