UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUSSEIN AL QARI,

                Plaintiff,                    Case No. 21-cv-10650

v.                                     Paul D. Borman
                                     United States District Judge

AMERICAN STEAMSHIP COMPANY,

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
EXCLUDE THE TESTIMONY OF PLAINTIFF'S MECHANICAL
ENGINEER, JOHN MORSE, P.E. (ECF NO. 26)**

This is a maritime personal injury action arising from injuries Plaintiff

Hussein Al Qari alleges he suffered while working as a Steward's Assistant aboard

Defendant American Steamship Company's bulk carrier, the *M/V H. Lee White*.

Plaintiff asserts claims for negligence under the Jones Act, 46 U.S.C. § 30101, *et

seq.*, unseaworthiness under the general maritime law of the United States, and for

maintenance and cure benefits under general maritime law.

Now before the Court is Defendant's Motion to Exclude the Testimony of

Plaintiff's Mechanical Engineer, John Morse, P.E. (ECF No. 26). The motion has

been fully briefed. The Court does not believe that oral argument will aid in its

disposition of this matter; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons that follow, the Court GRANTS Defendant's motion and excludes Dr. Morse's expert testimony in this case.

## I.    BACKGROUND

Plaintiff Hussein Al Qari was employed as a Steward's Assistant aboard Defendant American Steamship Company's vessel, the *M/V H. Lee White*. Plaintiff alleges that on November 5, 2020, he was climbing a flight of stairs from one level of the vessel to another, while carrying a box containing six jars of coffee grounds. He had one hand on the handrail and the other hand on the box. The box started to slip, and Plaintiff let go of the handrail to try to catch the box, lost his balance, and fell. Plaintiff claims he was seriously injured as a result of falling down the stairs.

On March 24, 2021, Plaintiff filed this lawsuit against Defendant based on his November 5, 2020, fall and injuries, asserting claims for (1) Jones Act Negligence, 46 U.S.C. § 30101, *et seq.* (2) Unseaworthiness under the general maritime law of the United States, and (3) Intentional/Negligent Failure to Provide Maintenance and Cure under general maritime law. (ECF No. 1, Compl.)

In support of his claims, Plaintiff produced the expert report of Captain Daniel Franklin, a Licensed Master of Unlimited Tonnage on the Great Lakes and a Federal

Seaway Pilot in District 2, and then supplemented with this expert – Dr. John Morse,

Ph.D., P.E., a mechanical engineer with experience in teaching, research, and

industrial applications, primarily in Occupational Safety and Health Administration

(OSHA) cases. In his report, Dr. Morse recites the following opinions:

1) It is my opinion that Mr. Al-Qari fell on the ships [sic] ladder when he lost his balance while climbing it.

2) It is my opinion that Mr. Al-Qari lost his balance because he removed his left hand from the handrail of the ships [sic] ladder.

3) It is my opinion that Mr. Al-Qari removed his left hand from the handrail because the cardboard tray of coffee cans was slipping from his right hand.

4) It is my opinion that if Mr. Al-Qari had been equipped with an alternative means of carrying the cardboard tray of coffee cans, such as a backpack, this incident would not have occurred.

5) It is my opinion that if Mr. Al-Qari had been supplied with an alternative means of moving the items to the main deck, such as a lifting system including a bucket and rope or mailbag and rope, this incident would not have occurred.

6) In summation, it is my opinion that American Steam Ship was negligent by creating a potentially dangerous condition on the vessel, not performing a hazard or risk analysis after moving the storeroom to another deck, not identifying the potentially dangerous condition and/or ignoring it, and not eliminating or at least minimizing the potentially dangerous condition by implementing safe transporting procedures, providing necessary equipment and/or properly training employees.

3

(ECF No. 26-1, Dr. Morse Report, PageID.495-96.)

Included in the "Materials Reviewed" for the preparation of his report, Dr. Morse lists four OSHA regulations, among a number of other materials. (*Id.* PageID.496-97.) These OSHA regulations pertain to "Walking-Working Surfaces" generally. *See* 29 C.F.R Part 1910, Subpart D. More specifically, these regulations provide the scope and definitions for the regulations in this subpart (29 C.F.R. § 1910.21) and pertain to ladders (29 C.F.R. § 1910.23), stairways (29 C.F.R. § 1910.25), and fall protection (29 C.F.R. § 1910.28). Dr. Morse stated that he also reviewed Plaintiff's Affidavit, blueprints, photographs, and measurements of the boat, including the ship's ladder, an exemplar tray of coffee cans, and the Accident Prevention Manual for Business and Industry, Engineering and Technology, 11th edition, National Safety Council, Itasca, IL, 1997. (ECF No. 26-1, Dr. Morse Report, PageID.496-97.)

In the "Discussion" section of his expert report, Dr. Morse opines that "[t]he combination of the tray of coffee cans carried by hand and the ships [sic] ladder created a potentially dangerous condition," and he then cites in support of that opinion:

> OSHA 1910.28(b)(11)(iii) requires that each ships [sic] ladder be equipped with handrails on both sides. This applies regardless of how narrow the ships [sic] ladder is, or if one side or both is enclosed.

4

> 1910.28(b)(11)(iii)
>> Each ship stairs and alternating treat type stairs is equipped
>> with handrails on both sides.
>
> This implies that both handrails of the ships [sic] ladder are to be used
> when going up or down the stairs. At an absolute minimum, however,
> one handrail must be used at all times.

(*Id.* at PageID.491-92.) Dr. Morse further opines that OSHA § 1910.23(b)(13)

requires an employer to ensure that "[n]o employee carries any object or load that

could cause the employee to lose balance and fall while climbing up or down the

ladder," and that this "regulation should be followed for loads carried on stairways."

(*Id.* PageID.493.)

Defendant filed a Motion to Exclude the Testimony of Plaintiff's Mechanical

Engineer, John Morse, P.E. (ECF No. 26, Def.'s Mot.) Defendant argues that it is

well settled that OSHA regulations do not apply to U.S. Coast Guard inspected

vessels, like the *M/V H. Lee White*. Defendant argues therefore that Dr. Morse should

not be allowed to proffer opinions based on those irrelevant regulations, and that his

opinions in this case should be excluded in their entirety.

Plaintiff filed a Response in opposition to Defendant's motion. (ECF No. 33,

Pl.'s Resp.) Plaintiff does not dispute that OSHA regulations do not apply to U.S.

Coast Guard inspected vessels, including the *M/V H. Lee White*. Plaintiff instead

5

argues that Dr. Morse's opinion should not be excluded, contending that most of his opinions do not reference OSHA at all and have nothing to do with the OSHA regulations, but instead are based on Dr. Morse's experience, which includes investigating over 575 ladder and climbing equipment accidents. Plaintiff further contends that some courts have allowed non-binding OSHA regulations into evidence as evidence of the proper standard of care and of negligence.

Defendant filed a Reply brief in support of its motion. (ECF No. 40, Def.'s Reply.) Defendant contends that if the citations to the OSHA regulations are removed from Dr. Morse's expert report, Dr. Morse would have no authority upon which to base his opinions, as he fails to cite to any other regulatory standards or guidelines regarding the stairway at issue. Defendants argue that Dr. Morse's opinions therefore are not relevant, and even if "somehow relevant," admitting Dr. Morse's testimony would cause a significant risk of unfair prejudice, confusing the issues, and misleading the jury.

## II.     STANDARD

Where a party challenges the testimony of an expert witness, Federal Rule of Evidence 702 triggers a court's "gate-keeping role" to determine the admissibility of that testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
>>
>> b) the testimony is based on sufficient facts or data;
>>
>> c) the testimony is the product of reliable principles and methods; and
>>
>> d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Simply stated, "[f]or expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) [his] testimony to be relevant; and [(3) his] testimony to be reliable." *Osborn v. Griffin*, 865 F.3d 417, 452 (6th Cir. 2017) (quoting *United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017)). In *Daubert*, the United States Supreme Court identified several factors that courts may consider in assessing whether an opinion is reliable, including whether the expert's methods are testable, subject to peer review, or "generally accepted." 509 U.S. at 592-95. Yet the *Daubert* factors "do not constitute 'a definitive checklist or test'" and do not apply in every case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 593). "Rather, the law grants a district court the same

7

broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142 (emphasis in original).

The party offering the expert has the burden of proving admissibility of the expert's opinion by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10. "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (internal quotation marks omitted) (quoting Fed. R. Evid. 702 Advisory Committee's Note, 2000 Amend.). In general, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). However, the court is not "required to admit expert testimony 'that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Nelson v. Tenn. Gas Pipeline Co*., 243 F.3d 244, 254 (6th Cir. 2001) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Newly proposed amendments to Rule 702 are set to go into effect on December 1, 2023, pending approval by the United States Supreme Court, and if Congress does not enact legislation that modifies or rejects the changes. Rule 702, as it is to be amended, will read:

8

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if <u>the proponent has demonstrated by a preponderance of the evidence that</u>:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the ~~expert has reliably applied~~ <u>expert's opinion reflects a reliable application of</u> the principles and methods to the facts of the case.

Fed. R. Evid. 702 (as proposed). The underlined and struck-through portions of the Rule reflect the changes being made by the Advisory Committee. The Committee explained that these changes are not substantive, but rather clarify how the Rule was meant to be applied since it was first amended in 2000. "The new language makes clear that the burden is on the proponent to demonstrate to the Court that an expert's testimony more likely than not meets the four enumerated requirements for admissibility." *In re Anderson*, No. 15-21681, 2023 WL 2229355, at *3 (W.D. Tenn. Jan. 20, 2023). "Though not yet in effect, Rule 702 in its newest form and the associated Committee Notes may be relied upon and cited to as persuasive authority 'because, as the Committee explains, they are "simply intended to clarify" how Rule 702 should have been applied all along.'" *Id.* (citing *Don't Say Daubert – Revising*

9

*Rule 702*, WINSTON & STRAWN LLP, June 29, 2022, https://www.winston.com/en/product-liability-and-mass-torts-digest/dont-say-daubert-reviving-rule-702.html [https://perma.cc/55ZC-NFLP].); *see also Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283-84 (4th Cir. 2021) (relying on the proposed amendments to Rule 702). This Court will similarly observe the proposed amendments to Rule 702.

Under normal circumstances, a district court may resolve a *Daubert* motion without holding an evidentiary hearing. *Nelson*, 243 F.3d at 248-29. A hearing is required only if the record is inadequate to decide the motion. *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). In the instant case, the Court concludes that an evidentiary hearing is not required.

## III.   DISCUSSION

Pursuant to 29 U.S.C. § 653, OSHA has regulatory authority over working conditions for United States employees. However, that statute specifically states that OSHA's authority does not apply to working conditions over which other federal agencies "exercise statutory authority to prescribe and enforce standards or regulations affecting occupational safety or health." 29 U.S.C. § 653(b)(1). Under 14 U.S.C. § 102, Congress provided the U.S. Coast Guard with such statutory authority to "administer laws and promulgate and enforce regulations for the

promotion of safety of life and property on and under the high seas and waters subject to the jurisdiction of the United States, covering all matters not specifically delegated by law to some other executive department." 14 U.S.C. § 102(3). The United States Supreme Court had stated that, with respect to Coast Guard "inspected vessels," the U.S. Coast Guard's statutory authority is broad and preempts all OSHA regulations. *See Chao v. Mallard Bay Drilling*, 534 U.S. 235, 242 (2002) ("[T]he Coast Guard and OSHA signed a 'Memorandum of Understanding' … evidencing their agreement that … OSHA may not enforce the OSH Act with respect to the working conditions of seamen aboard inspected vessels."). This preemption "extends not only to those working conditions on inspected vessels specifically discussed by Coast Guard regulations, but to all working conditions on inspected vessels." *Id.*

Plaintiff in this case was injured while working on Defendant's vessel, the *M/V H. Lee White*. The U.S. Coast Guard has inspected the *M/V H. Lee White* pursuant to federal regulations and issued a Certificate of Inspection to the vessel. (ECF No. 26-2, Certificate of Inspection.) Defendant contends that because the *M/V H. Lee White* is a Coast Guard inspected vessel, the OSHA regulations have been preempted by the Coast Guard regulations and thus do not apply in this case. Defendant argues that Plaintiff's expert, Dr. Morse, provides opinions in this case

11

based solely on certain OSHA regulations, and because such OSHA regulations are irrelevant to Plaintiff's claims in this case, Dr. Morse's opinions should be excluded in their entirety, citing, in part, *Clary v. Ocean Drilling & Exploration Co.*, 609 F.2d 1120, 1121 (5th Cir. 1980) (holding that OSHA regulations do not apply to working conditions of seamen on vessels operating on the high seas); *Carbo v. Chet Morrison Servs., LLC*, No. 12-3007, 2013 WL 5774948, at *3 (E.D. La. Oct. 24, 2013) (excluding application of OSHA regulations from expert's report and expert's trial testimony because they are inapplicable to the subject Coast Guard inspected vessel); and *Tran v. Arctic Storm Mgmt., Grp., LLC*, No. 2:06-CV-01275 (W.D. Wash. Dec. 5, 2007) (attached as ECF No. 26-3) (excluding expert testimony on OSHA regulations with respect to Coast Guard inspected vessel). (ECF No. 26, Def.'s Mot., PageID.471, 475, 481.) As Defendant correctly notes, Dr. Morse does not cite to any other regulatory authority as the basis of his opinions.

Plaintiff agrees in his Response brief that OSHA regulations do not apply to the *M/V H. Lee White*. Plaintiff contends, however, that Dr. Morse's opinions are admissible in this case because his opinions are only "barely, if at all, based on OSHA regulations." (ECF No. 33, Pl.'s Resp., PageID.1117.) Rather, Plaintiff asserts that Dr. Morse's opinions are based on his experience, which includes investigating over 575 ladder and climbing equipment accidents. Plaintiff further

12

argues that some courts have held that parties are entitled to cite non-binding regulations as evidence of good safety practices and thus evidence of negligence, citing to *Schouweiler v. W. Towboat Co.*, No. C05-502Z, 2007 WL 4410252 (W.D. Wash. Sept. 14, 2007); *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11-20723-CIV, 2012 WL 1792628 (S.D. Fla. May 15, 2012); *Giorgio v. Holland Am. Line, Inc.*, No. C05-0038JLR, 2006 WL 1042003 (W.D. Wash. Apr. 4, 2006); and *Donlon v. Gluck Grp., LLC*, No. 09-5379, 2011 WL 6020574 (D.N.J. Dec. 2, 2011).

The Court will grant Defendant's motion and exclude Dr. Morse's expert testimony in this case. It is undisputed in this litigation that the *M/V H. Lee White* is a Coast Guard-inspected vessel, and that the OSHA regulations Dr. Morse relies on as the bases for his opinion that "[t]he combination of the tray of coffee cans carried by hand and the ships ladder created a potentially dangerous condition" are completely preempted in this case. *See Chao*, 534 U.S. 242. Those OSHA regulations therefore are irrelevant to the claims and defenses in this case and admitting Dr. Morse's opinions based on those irrelevant regulations could cause a significant risk of unfair prejudice, confusing the issues, and misleading the jury. Dr. Morse does not cite to any Coast Guard regulatory standards or guidelines regarding the stairway at issue or the circumstances surrounding Plaintiff's accident. Dr. Morse therefore is precluded from offering any opinions based on those irrelevant

13

regulations, including his opinions in Section 7 of his report regarding the OSHA requirements regarding ladders and carrying an object or load up or down ladders. *See Carbo*, 2013 WL 5774948, at *3.

The Court further rejects Plaintiff's argument that the OSHA regulations cited in Dr. Morse's report are admissible as non-binding evidence of the standard of care in this case. The caselaw Plaintiff cites in support of its argument is distinguishable. *Donlon* is a product liability case as a result of a fall down the stairs of a houseboat, not a maritime case, and involves the admissibility of non-binding American Society for Testing and Materials (ASTM) industry standards, not completely preempted OSHA guidelines. *Donlon*, 2011 WL 6020574, at *4. *Cook* and *Giorgio* both involve passenger injuries on foreign-flagged cruise ships, not Jones Act personal injury claims, and do not address the admissibility of preempted OSHA standards. *See Cook*, 2012 WL 1792628, at *3-4 (discussing admissibility of non-binding advisory guidelines in lawsuit brought by a passenger injured on a cruise ship); *Giorgio*, 2006 WL 1042003, at *2 (discussing admissibility of non-binding regulations in plaintiff's negligence claim). And *Schouweiler* was a bench trial, not a jury trial, and while the court did note in its Findings of Fact following the bench trial that OSHA does not apply to inspected barges (like the one at issue in that case) but did "provide[] some evidence," the court nevertheless concluded that the OSHA

14

standards "do not constitute evidence of negligence in this case." *Schouweiler*, 2007 WL 4410252, at *4.

Plaintiff notes in his Response brief that Morse also relies on the National Safety Council's Accident Prevention Manual in support of his contention that Defendant should have conducted a job hazard analysis. However, as Defendant explains in its Reply brief, the National Safety Council's Accident Prevention Manual is inapplicable to this matter because "there is no case in which a court has held that this manual can or should serve as a standard for a Jones Act negligence or unseaworthiness claim," and because "the law does not mandate that a marine employer undertake a hazard or risk analysis in order to discharge its Jones Act obligation to provide a reasonably safe workplace[.]" (ECF No. 40, Def.'s Reply, PageID.2050, citing *Harrison v. Seariver Maritime*, No. 02-40307, 2003 WL 342266, at *7 (5th Cir. 2003) ("failure to conduct a [job hazard analysis] for this routine, non-hazardous task did not violate [maritime employer's] duty to exercise ordinary care"). As the *Harrison* court explained, "moving shipboard equipment is a common and expected physical task[, and] [o]rdinary prudence is exercised when a safe procedure is used for a routine task, even when a safer procedure might exist." *Harrison*, 2003 WL 342266, at *5; *see also Glaze v. Higman Barge Lines, Inc.*, 611 F. App'x 227, 228 (5th Cir. 2015) ("The captain's alleged failure to conduct a job

safety analysis did not establish a violation of the standard of care."). Thus, the Accident Prevention Manual is inapplicable to this case and Dr. Morse's proposed testimony on this subject with regard to the non-hazardous task of carrying supplies up a ladder on the ship would not be helpful to the jury to determine a fact at issue. *See Webb v. Crounse Corp.*, No. 5:14-CV-00133, 2016 WL 3406515, at *3 (W.D. Ky. June 17, 2016) (precluding expert from testifying about the nonperformance of a job hazard analysis because that testimony will not help the jury determine any fact at issue).

The Court further notes that Plaintiff has in fact conceded in this case that there was nothing wrong with the stairway at the time of his accident (ECF No. 35-1, Pl.'s Dep. at p. 81, PageID.1319), and thus any expert testimony Dr. Morse could provide regarding the physical structure or condition of the stairway is not at issue.

In addition, Plaintiff has retained another expert, Captain Daniel Franklin, a Licensed Master of Unlimited Tonnage on the Great Lakes and a Federal Seaway Pilot in District 2, as a liability expert witness, to offer opinions regarding the seaworthiness of the *M/V H. Lee White* and Plaintiff's accident.

Accordingly, the Court finds that the OSHA regulations cited in Dr. Morse's expert report are not relevant to the claims or defenses in this case, and Dr. Morse's testimony therefore is not relevant and not admissible. The Court further finds that

16

admitting Dr. Morse's expert testimony in this case would constitute a serious risk of unfair prejudice and confusing the issues, and thus mislead the jury.

## IV.    CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's Motion to Exclude the Testimony of Plaintiff's Mechanical Engineer, John Morse, P.E. (ECF No. 26).

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: August 7, 2023

17