UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUSSEIN AL QARI,

                  Plaintiff,                  Case No. 21-cv-10650

v.                                    Paul D. Borman
                                    United States District Judge

AMERICAN STEAMSHIP COMPANY,

                  Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE OR LIMIT OPINION TESTIMONY OF PLAINTIFF'S EXPERT CAPTAIN DANIEL FRANKLIN (ECF NO. 27)

This is a maritime personal injury action arising from injuries Plaintiff Hussein Al Qari alleges he suffered while working as a Steward's Assistant aboard Defendant American Steamship Company's bulk carrier, the *M/V H. Lee White*. Plaintiff asserts claims for negligence under the Jones Act, 46 U.S.C. § 30101, *et seq.*, unseaworthiness under the general maritime law of the United States, and for maintenance and cure benefits under general maritime law.

Now before the Court is Defendant's Motion to Exclude or Limit Opinion Testimony of Plaintiff's Liability Expert Captain Daniel Franklin (ECF No. 27). The motion has been fully briefed. The Court does not believe that oral argument will

aid in its disposition of this matter; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to exclude or limit Captain Franklin's expert testimony in this case.

## I.  BACKGROUND

Plaintiff Hussein Al Qari was employed as a Steward's Assistant aboard Defendant American Steamship Company's vessel, the *M/V H. Lee White*. Plaintiff alleges that on November 5, 2020, he was climbing a flight of stairs from one level of the vessel to another, while carrying a box containing six jars of coffee grounds. He had one hand on the handrail and the other hand on the box. The box started to slip, and as Plaintiff let go of the handrail to try to catch the box, he lost his balance, and fell. Plaintiff claims he was seriously injured as a result of falling down the stairs.

On March 24, 2021, Plaintiff filed this lawsuit against Defendant based on his November 5, 2020, fall and injuries, asserting claims for (1) Jones Act Negligence, 46 U.S.C. § 30101, *et seq.* (2) Unseaworthiness under the general maritime law of the United States, and (3) Intentional/Negligent Failure to Provide Maintenance and Cure under general maritime law. (ECF No. 1, Compl.)

In support of his claims, Plaintiff retained Captain Daniel Franklin, a Licensed Master of Unlimited Tonnage on the Great Lakes and a Federal Seaway Pilot in District 2, as a liability expert witness. Captain Franklin authored two expert reports in this case.

Captain Franklin produced his first report, dated December 20, 2021, prior to the deposition of Plaintiff or any of the witnesses in this case. Captain Franklin relied on Plaintiff's November 30, 2021, "declaration," documents produced by Defendant, Defendant's General Safety Policy, and three witness statements of crew members who saw Plaintiff after he fell. Captain Franklin offered the following opinions in his preliminary report:

1. In my opinion, unseaworthy and unsafe conditions were created when the Galley sundries were relocated to the Engine room storage area without a proper risk and safety assessment conducted to determine job hazards associated with requiring the Steward Assistant to carry sundries up the engine room access stairway to the main deck where the Galley is located. It is my opinion that a proper job hazard analysis would have identified the potential fall hazard created by having personnel carry bulky items up a stairwell designed for personnel to have both hands available for use on handrails while transiting the stairway. It is my opinion a proper job hazard analysis would have identified the necessity of other means for moving sundries to the Galley deck from the engine room storage area. It is my opinion a proper job hazard analysis would have identified the necessity to either keep the Galley sundries in the Galley area or at a minimum require the identification and implementation of other means to move sundries safely from the Engine room. …

3

2.  In my opinion, [Defendant] ASC and the Captain created an unsafe and unseaworthy condition by moving ship sundries storage to the engine room without a proper job hazard analysis and then allowed an unsafe and unseaworthy condition to continue to exist when they did not identify and address the job hazard associated with carrying goods from the sundries locker located in the engine room up to the main deck. Stop Talk Proceed guidelines were required to "determine and identify the proper job procedures, hazard recognition, appropriate safety procedures to be used" (ASC General Safety Policy, page 6), yet there is no record I have been provided with of any job hazard analysis when changing the Steward Assistant's duties to include moving goods from the engine room up a stairway designed for personnel to have available use of both hands to prevent fall accidents on that stairway. … It is my further opinion ASC and the Captain failed to protect Mr. Al Qari from foreseeable risk and harm. ASC and the Captain failed to provide Mr. Al Qari proper training. ASC and the Captain failed to make adequate inspections per ASC safety policies and procedures. ASC and the Captain failed to recognize the danger. ASC and the Captain failed to provide proper tools and equipment under the circumstances. … A backpack could have been provided for use by Mr. Al Qari to carry goods up the stairs between decks while providing for use of both hands on the handrails. There are multiple possible changes to tools, equipment, or procedures which could have been implemented to mitigate hazards associated with this change in normal operating procedures. The procedure for retrieving sundries from the Engine room was unsafe, hazards associated with this new procedure were never properly analyzed, ASC ship policies and procedures were not followed, and the crew was not adequately trained to perform risk analysis.

(ECF No. 27-1, Franklin Prelim. Report, PageID.543-56.)

After the depositions of three witnesses occurred – Plaintiff, Chief Cook Bernard Lawes, and Defendant's Rule 30(b)(6) corporate representative Michael

4

Briner – Captain Franklin produced a supplemental report on August 27, 2022.

Captain Franklin offered the following additional opinions in that report:

> In my opinion Mr. Al-Qari was not trained on how to retrieve coffee from the engine room storage area. Mr. Al-Qari's supervisor Chief Cook Lawes stated "Not to my knowledge" when asked "did anyone ever say to Mr. Al-Qari when you go to get the coffee, this is the procedure that you have to follow?" (Lawes Deposition, page 28).
>
> The Steward's Assistant position is an entry level position. Mr. Al Qari was unaware of the backpack available for retrieving stores. Mr. Al-Qari was questioned about the backpack during his deposition "Q. This picture that we marked as Exhibit 2, what about the backpack in that picture in the storage locker, could you have put them in there?" (Al-Qari Deposition, page 62) showing a safer method of retrieving stores was available. Mr. Al-Qari stated "But where did this bag from? I never seen this bag before in all my life." (Al-Qari Deposition, page 63). Mr. Briner stated when asked "Q. So no one teaches SA a procedure for a retrieving those six cans of coffee, correct?" "A. Correct, there would be no procedure given for that part of his job. That would be routine. I could walk onboard and do that with being told to go get coffee." (Briner Deposition, page 11). Mr. Al-Qari's direct supervisor recognizes his responsibility to properly train him "Q. As the supervisor for Mr. Al-Qari, it's your duty to train him in the proper procedures, correct? A. Yes, sir." (Lawes Deposition, page 42). Mr. Briner states the dangers of this task should have been performed during an STP when asked "Q. You assumed this was handled in the STP. A. Yes, I think it is still our STP process and it's the safety material handling that is completed by our employees." (Briner Deposition, page 24). When asked about the STP held with Mr. Al-Qari concerning retrieving coffee, Mr. Lawes states "Q. tell me what you told Mr. Al-Qari for the proper job procedure for retrieving a box of coffee from the engine room, please. A. No, I would tell him when he comes up to the galley with the coffee how to stock in on the shelf." (Lawes Deposition, page 52).

5

> In my opinion, ASC and the Captain created an unsafe and unseaworthy condition by failing to ensure Mr. Al-Qari was properly trained in performance of his duties.

(ECF No. 27-2, Franklin Supp. Report, PageID.548.) Captain Franklin then stated that he "reserve[s] the right to supplement this opinion." (*Id.*)

Defendant has now filed a motion to exclude or limit the opinion testimony of Captain Franklin. (ECF No. 27, Def.'s Mot.) Defendant argues that the Court should exclude Captain Franklin's opinions for the following reasons: (1) those opinions do not meet the threshold reliability standards because they ignore Plaintiff's deposition testimony; and (2) those opinions will not be helpful to the jury because the proposed testimony is within the ordinary province of a lay person. Defendant further argues that, to the extent the Court allows any part of Captain Franklin's opinions to stand, it should limit Captain Franklin to expressing those opinions set forth in the Rule 26(a)(2) disclosures and prohibit him from expressing opinions, observations, or conclusions not previously disclosed.

Plaintiff filed a Response in opposition to Defendant's motion arguing that Captain Franklin's opinions are reliable because he testified that he read, reviewed, and incorporated Plaintiff's entire deposition testimony in his opinions, and his opinions about how a seaman should carry out his orders on a commercial ship involve matters beyond the ken of the average juror. Plaintiff further argues that

6

Captain Franklin's opinions disclosed in his deposition should not be excluded because Defendant had the opportunity to cure any prejudice by questioning Captain Franklin about those opinions during his deposition.

Defendant filed a Reply brief in support of its motion, reasserting that Captain Franklin's proposed opinions should be excluded because they do not satisfy the reliability threshold under for admissibility of expert opinion testimony, and, in particular, the opinions are within the knowledge of the average juror. Defendant further argued that Captain Franklin's opinions are a moving target and that he should not be allowed to offer any opinions that were not previously disclosed.

## II.   STANDARD

Where a party challenges the testimony of an expert witness, Federal Rule of Evidence 702 triggers a court's "gate-keeping role" to determine the admissibility of that testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;

7

c) the testimony is the product of reliable principles and methods; and

d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Simply stated, "[f]or expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) [his] testimony to be relevant; and [(3) his] testimony to be reliable." *Osborn v. Griffin*, 865 F.3d 417, 452 (6th Cir. 2017) (quoting *United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017)). In *Daubert*, the United States Supreme Court identified several factors that courts may consider in assessing whether an opinion is reliable, including whether the expert's methods are testable, subject to peer review, or "generally accepted." 509 U.S. at 592-95. Yet the *Daubert* factors "do not constitute 'a definitive checklist or test'" and do not apply in every case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 593). "Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142 (emphasis in original).

The party offering the expert has the burden of proving admissibility of the expert's opinion by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

"[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (internal quotation marks omitted) (quoting Fed. R. Evid. 702 Advisory Committee's Note, 2000 Amend.). In general, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). However, the court is not "required to admit expert testimony 'that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Nelson v. Tenn. Gas Pipeline Co*., 243 F.3d 244, 254 (6th Cir. 2001) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Newly proposed amendments to Rule 702 are set to go into effect on December 1, 2023, pending approval by the United States Supreme Court, and if Congress does not enact legislation that modifies or rejects the changes. Rule 702, as it is to be amended, will read:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if <u>the proponent has demonstrated by a preponderance of the evidence that</u>:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the ~~expert has reliably applied~~ <u>expert's opinion reflects a reliable application of</u> the principles and methods to the facts of the case.

Fed. R. Evid. 702 (as proposed). The underlined and struck-through portions of the Rule reflect the changes being made by the Advisory Committee. The Committee explained that these changes are not substantive, but rather clarify how the Rule was meant to be applied since it was first amended in 2000. "The new language makes clear that the burden is on the proponent to demonstrate to the Court that an expert's testimony more likely than not meets the four enumerated requirements for admissibility." *In re Anderson*, No. 15-21681, 2023 WL 2229355, at *3 (W.D. Tenn. Jan. 20, 2023). "Though not yet in effect, Rule 702 in its newest form and the associated Committee Notes may be relied upon and cited to as persuasive authority 'because, as the Committee explains, they are "simply intended to clarify" how Rule 702 should have been applied all along.'" *Id.* (citing *Don't Say Daubert – Revising Rule 702*, WINSTON & STRAWN LLP, June 29, 2022, https://www.winston.com/en/product-liability-and-mass-torts-digest/dont-say-daubert-reviving-rule-702.html [https://perma.cc/55ZC-NFLP].); *see also Sardis v.*

10

*Overhead Door Corp.*, 10 F.4th 268, 283-84 (4th Cir. 2021) (relying on the proposed amendments to Rule 702). This Court will similarly observe the proposed amendments to Rule 702.

Under normal circumstances, a district court may resolve a *Daubert* motion without holding an evidentiary hearing. *Nelson*, 243 F.3d at 248-29. A hearing is required only if the record is inadequate to decide the motion. *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). In the instant case, the Court concludes that an evidentiary hearing is not required.

### III.   DISCUSSION

### A. Whether Captain Franklin's Proffered Opinions are Reliable

Defendant does not question Captain Franklin's qualifications to offer opinion testimony in this case. Rather, Defendant argues that the Court should exclude Captain Franklin's opinions as unreliable because he ignores what Defendant asserts is the key element of Plaintiff's deposition testimony. Defendant notes that Captain Franklin's original report, proffered before any depositions were taken in this case, was based on Plaintiff's declaration, materials exchanged in written discovery, and three witness statements. Defendant contends that the declaration was prepared by Plaintiff's counsel, not Plaintiff, and does not aver that it is based on Plaintiff's personal knowledge.

11

After Plaintiff, and other witnesses, were deposed, Captain Franklin then proffered a one-page supplemental report. Defendant argues that Captain Franklin only relied on selected excerpts of the deposition testimony "that the plaintiff's counsel spoon-fed him," and that he improperly ignored Plaintiff's deposition testimony in which he admitted that his fall was an accident, and that Defendant did not cause or contribute to it:

> Q:     [by Defendant's counsel] Would you agree that your fall was an accident?
>
> A:     Yes.
>
> Q:     There's nothing wrong with the boat or the crew.
>
> A:     No.
>
> Q:     Is there anything you think American Steamship Company did wrong that caused or contributed to your accident?
>
> A:     No.

(ECF No. 35-1, Pl.'s Dep. at p. 90, PageID.1328.) Defendant states that Captain Franklin testified in his deposition that he simply did not believe this testimony by Plaintiff was relevant:

> Q:     [by Defendant's counsel] Where in your report does it appear that … Mr. Al Qari … does not think that American Steamship Company did anything wrong that caused or contributed to his accident, where does that appear in your report?

12

A:      I don't put it in my report because I don't think it is relevant to
        the case.

(ECF No. 35-5, Capt. Franklin Dep. at pp. 126-27, PageID.1856-57.)

Defendant argues that this deposition testimony demonstrates that Captain Franklin's opinions are not reliable because under Fed. R. Evid. 703 "[i]f the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *Rondigo, LLC v. Casco Twp., Mich.*, 537 F. Supp. 2d 891, 894 (E.D. Mich. 2008). Defendant contends that no expert would ever reasonably rely on a declaration prepared not by the plaintiff, but by plaintiff's counsel, or upon selected excerpts of deposition testimony selected by plaintiff's counsel, to the exclusion of an admission by the plaintiff that he does not believe the defendant to be at fault.

Plaintiff contends in his Response brief that Captain Franklin's opinions are reliable because he testified in his deposition that he did read, review, and incorporate Plaintiff's entire deposition:

Q:      [by Defendant's counsel] Did you read Al Qari's deposition
        transcript?

A:      Yes, I did.

***

13

Q:      My question is: You don't cite any of the other references to Mr. Al Qari's deposition testimony that I asked you about previously, including that he believes that there is nothing that American Steamship Company did that caused or contributed to this accident; it that correct?

A:      I did not cite that.

Q:      Don't you think as an expert witness for the Plaintiff it would be important for you to consider the entirety of Mr. Al Qari's sworn deposition testimony in reaching your conclusions?

                                   ***

A:      I did consider, I read the entire deposition from Mr. Al Qari and I did use that in forming my opinions.

Q:      Where in your report does it appear that, does Mr. Al Qari's testimony that he does not think that American Steamship Company did anything wrong that caused or contributed to his accident, where does that appear in your report?

A:      I don't put it in my report because I don't think it is relevant to the case.

(ECF No. 35-5, Franklin Dep. at pp. 43, 126-27, PageID.1773, 1856-57.) Captain Franklin similarly testified to reading and reviewing the depositions of Bernard Lawes, the Chief Cook, and Michael Briner, Defendant's 30(b)(6) witness, before authoring his supplemental report. (*Id.* at p. 128, PageID.1858.)

Federal Rule of Evidence 703 provides, in part, that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or

14

personally observed." Fed. R. Evid. 703. Courts have excluded expert testimony that "cherry-picks" relevant data. *See EEOC v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015). Although an expert's opinion is not admissible if it is speculative or mere guess work, the court should admit expert testimony if it has a reasonable factual basis. *See United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018) (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)). In such a circumstance, "any remaining challenges merely go to the weight, as opposed to the admissibility, of the expert testimony." *Id.* (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530).

First, as to Plaintiff's November 30, 2021, declaration, the Court notes that there is nothing necessarily unreasonable or nefarious about the fact that Plaintiff's counsel prepared the declaration for Plaintiff and then had Plaintiff sign it. The declaration states upfront that it was prepared by Plaintiff's counsel after he and Plaintiff had an opportunity to discuss Plaintiff's "file." (ECF No. 27-4, Pl.'s Decl., ¶ 19, PageID.588-89.) It is not uncommon for counsel to prepare affidavits or declarations for a witness and then to have the witness review and sign the statement. *See Basil v. CC Servs., Inc.*, 116 F. Supp. 3d 880, 885 n.2 (N.D. Ill. 2015) ("It is common knowledge that declarations are drafted by attorneys[.]"). However, while the declaration does include a statement that Plaintiff "reviewed this statement" and

15

he "swear[s] that it is true," the declaration is not notarized, and Plaintiff does not specifically aver that the statements in the declaration are "based on his personal knowledge" or declare the statements are true "under penalty of perjury." (ECF No. 27-4, Pl.'s Decl., PageID.588-89.) "Personal knowledge may be inferred from the content of the statements .... [and] may also flow logically from the context of the affidavit." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 956 (S.D. Ohio 2000) (quotation omitted); *see also Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 499 (6th Cir. 2017) (same). Plaintiff's declaration is essentially a retelling of the events leading up to the accident from Plaintiff's perspective, and Defendant fails to point to any statement(s) that would not be based on Plaintiff's personal knowledge, or that is inconsistent with his subsequent deposition testimony.

However, Plaintiff's declaration does not comply with the requirements of 28 U.S.C. § 1746, which provides:

> any matter … required or permitted to be supported, evidenced, established, or proved by the sworn declaration … or affidavit … may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statements in writing of such person **which is subscribed by him, as true under penalty of perjury**, and dated, in substantially the following form: ... "**I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).**"

28 U.S.C. § 1746(2) (emphases added).

16

The Sixth Circuit Court of Appeals permits unsworn declarations to be submitted in lieu of affidavits so long as they meet the strictures of § 1746. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 n.3 (6th Cir. 2001). Plaintiff's November 30, 2021, declaration was not made "under penalty of perjury" and therefore fails to satisfy the statutory requirements of an unsworn declaration offered as evidence. *See Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 515-16 (6th Cir. 2022) (affirming exclusion of affidavit that was not a proper declaration under 28 U.S.C. § 1746 because it was unsworn and filed with Blount's electronic signature rather than his personal signature); *Sfakianos v. Shelby Cnty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012) (affirming the district court's decision to decline consideration of the plaintiff's affidavit that was not signed "under penalty of perjury" pursuant to § 1746). Given this background, while the Court finds that Plaintiff's November 30, 2021, declaration may not be considered as evidence supporting Captain Franklin's initial report because it is not a proper declaration under 28 U.S.C. § 1746, Plaintiff's subsequent sworn deposition testimony has since been provided to Captain Franklin as a basis for his opinions, as stated in a supplemental report.

Second, as to Defendant's contention that Captain Franklin failed to rely on the entirety of the witnesses' deposition testimony in reaching his opinions, the

Court finds, contrary to Defendant's contention, that Captain Franklin expressly
testified that he did review all of Plaintiff's deposition testimony, even though he
only cited to a few select passages of that testimony in his supplemental report, and
that he read and reviewed Lawes' and Briner's deposition testimony as well. Captain
Franklin therefore does not appear to have "cherry picked" the data, or facially
improperly relied on only the data Plaintiff's counsel "spoon fed" him. As one
district court explained, "[t]he fact that an expert focusses on one piece of
information or fact over another within that data set does not mean that the opinions
are automatically unreliable products of 'cherry picking' data. Criticism of which
facts were selected or relied upon 'go to the weight of [the] testimony, not its
admissibility.'" *In re de Pont de Nemours Co. C-8 Personal Injury Litig.*, 345 F.
Supp. 3d 897, 907-08 (S.D. Ohio 2015) (Sargus, J.) (citation omitted). Although an
expert's opinion is not admissible if it is speculative or mere guess work, the Court
should admit expert testimony if it has a reasonable factual basis. *See Ramer*, 883
F.3d at 680). "[M]ere weaknesses in the factual basis of an expert witness' opinion
... bear on the weight of the evidence rather than on its admissibility." *McLean v.
988011 Ontario Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (internal quotations
omitted); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination,
presentation of contrary evidence, and careful instruction on the burden of proof"

18

are available to the opposing party to attack "shaky but admissible evidence."). "Indeed, arguments related to 'contrary evidence' or 'incompleteness' go to the weight of the evidence rather than its admissibility and are, therefore, properly rejected at this juncture." *Thomas v. Lambert*, 606 F. Supp. 3d 592, 603 (E.D. Mich. 2022) (citing *United States v. Lang*, 717 F. App'x 523, 536 (6th Cir. 2017) ("Although Rule 702 does not require an expert to consider *all* the facts and data available, it does require the factual basis of his opinion to be *sufficient*." (emphasis in original)); *Whirlpool v. LG Elecs. U.S.A., Inc.*, No. 1:03 CV 414, 2006 WL 62846, at *4 (W.D. Mich. Jan. 10, 2006) ("Selection of an inappropriate universe generally affects the weight of the resulting data, not its admissibility.") (citation omitted).

Accordingly, the Court will not exclude Captain Franklin's opinion testimony as unreliable on the bases argued by Defendant. Rather, on cross-examination, Defendant's counsel may thoroughly explore Captain Franklin's opinions and the bases therefore.

## B. Whether Captain Franklin's Proffered Opinions are Relevant

Defendant next argues that Captain Franklin's opinion testimony should be excluded because it pertains to matters of common knowledge and thus is unhelpful to the trier of fact. According to Defendant, Captain Franklin's "fundamental opinion" is that Defendant was negligent, and its vessel was unseaworthy, because

Plaintiff fell while attempting to carry supplies up a fixed stairway as part of his routine job duties. Defendant contends that understanding the process or the potential hazards associated with ascending or descending a stairway when carrying something is a matter within the common knowledge of the trier of fact, and expert testimony therefore is not necessary, because expert testimony is improper if it addresses matters within the understanding or common knowledge of the average juror or invades the province of the jury. (ECF No. 27, Def.'s Mot., PageID.527-30, citing *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) ("If everyone knows [something], then we do not need an expert because the testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue.").) Defendant asserts that how to climb stairs and how to don a backpack, or not, are everyday matters that ordinary jurors will be able to understand without Captain Franklin's exposition.

Plaintiff argues in response that Defendant looks at this case too simplistically, and that the average juror does not know anything about a seaman carrying heavy items, such as a tray with six coffee cans, up a ship's ladder. Plaintiff asserts that stairs on a vessel are actually a steep ladder and thus are often very different from ordinary stairs in a home or business. Plaintiff further points out that Defendant's 30(b)(6) witness and safety director, Michael Briner, and Plaintiff's

20

supervisor, Chief Cook Bernard Lawes, both testified as to the importance of a "Stop Talk Proceed" (STP) meeting to assure employees fully understand their duties and how to perform them in a safe manner, routine or not, and that they did not have an STP meeting with Plaintiff about retrieving coffee from the engine room. Plaintiff argues that "surely [Defendant's] crew members are entitled to have their experts explain after the fact [of an accident] to a jury how [Defendant] went wrong and how that task actually should have been performed." (ECF No. 32, Pl.'s Resp., PageID.1062-66.)

The Court finds that Defendant has a strong argument, at least with respect to Captain Franklin's proposed testimony regarding the "dangers" of carrying materials up a ship's ladder.[1] As Defendant points out in its Reply brief, Plaintiff testified that the coffee was not too heavy for him to carry, and that there was nothing wrong with the stairway at the time of the accident. (See ECF No. 35-1, Pl.'s Dep. at pp. 79, 81, PageID.1317, 1319.) It is not clear that expert testimony is necessary for the jury to

---

[1] Captain Franklin also offers expert opinion testimony about the necessity of conducting a risk safety assessment before "relocating" the goods from the galley level to the engine room, the need for "Stop Talk Proceed" procedures, and Plaintiff's training (or lack thereof). Defendant does not separately address these opinions.

21

understand the process or potential hazards associated with climbing the ship's stairs while carrying something.

In *Salem v. United States Lines Co.*, 370 U.S. 31 (1962), the United States Supreme Court found that expert testimony was not required when the plaintiff, a lookout on the *S.S. United States*, alleged negligence for failure to provide railings or other safety devices on a crow's-nest platform. The plaintiff had provided certain evidence, including testimony and photographs of the crow's nest, which the Court found sufficient to allow the jury to determine whether proper marine architecture required railings. *Id.* at 34-37. The Court held that expert evidence is not only "unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'" *Id.* at 35 (quoting *U.S. Smelting Co. v. Parry,* 166 F. 407, 415 (8th Cir. 1909)). In other words, if the issues presented are within the jury's common experience and understanding, expert testimony is not required.

Another example of an admiralty issue lacking the complexity which would require expert testimony is found in *Walker v. Sinclair Refining Co.,* 320 F.2d 302

22

(3d Cir.1963). In that case, plaintiff was injured after falling over shipboard obstacles while carrying a heavy bag of linen. The issue before the court was whether the platform on which the plaintiff was carrying the clothes (which was located in a narrow passageway of the ship) was seaworthy. Since there was no complexity to the design of the allegedly unseaworthy platform, the court concluded that an expert in marine design was not necessary:

> It was obvious to one of ordinary intelligence, by looking at the exhibits which the jury had before it, that a seaman carrying this load on his shoulder and by reason of the design and construction of the platform and steps with the varying height of the pipes in making this difficult step, could, in the maneuver, cause him to "jostle" himself and thus receive the injuries of which he complains.

*Walker,* 320 F.2d at 305.

Similarly, in the case of *Peters v. Five Star Marine Service,* 898 F.2d 448 (5th Cir.1990), expert testimony was not needed based upon the facts presented in that case. The plaintiff was injured after he slipped and fell while offloading machinery from a supply boat in rough seas, and he retained a maritime operations expert to testify in support of plaintiff's theories of liability: that the weather conditions were unsafe for offloading, that plaintiff slipped on diesel fuel spilled on the deck of the vessel, and that he fell while attempting the hazardous job of offloading improperly stored cargo. The jury was asked to decide whether it was reasonable for an employer

to instruct his employee to manually move equipment on deck in heavy seas with the possibility that spilled diesel fuel had made the deck slippery and that the cargo had improperly been stored. The court held that a jury could assess the above matters using their common sense because they were the kinds of things within the knowledge of typical people. *Id.* at 450.

Plaintiff's reliance on *Carbo v. Chet Morrison Services, LLC*, No. 12-3007, 2013 WL 5774948 (E.D. La. Oct. 24, 2013), is distinguishable. In *Carbo*, the plaintiff seaman was injured when he fell on the stairs of defendant's vessel while retrieving a bowl of grapes from the galley for the Captain of the vessel. *Id.* at *1. Plaintiff's complaint alleged negligence under the Jones Act and unseaworthiness under general maritime law, and he retained a naval architect/marine engineer to inspect the vessel and prepare a report. *Id.* The court found the expert's opinion testimony regarding the design and condition of the stairs (i.e., differences in the rise of the steps), based on his more than fifty years of engineering experience, was admissible and relevant to aid the jury "in determining the reasonableness of the stairs on the [vessel] in relation to other stairways in similar vessels." *Id.* at *5. However, the court also found that this expert was not a safety expert and that "a jury does not require an expert's assistance to determine that asking somebody to carry a bowl up a set of stairs would require him to carry the bowl with one hand,

24

thus only hold on to the handrail with one hand." *Id.* *5 n.7. The *Carbo* court further excluded the expert's opinions that the accident was the result of the Captain's negligence and that the Captain violated the vessel's "three point contact" rule because "such statements do provide inadmissible legal conclusions[.]" *Id.* at *5. *See also Robertson v. Cal Dive Int'l, Inc.*, No. 05-807, 2006 WL 1999210, at *2-3 (E.D. La. July 14, 2006) (finding that naval architect/marine engineer expert could opine on configuration and design of steps on which plaintiff allegedly slipped and fell while carrying a salad bowl, but could not comment on matters within the realm of common experience, such as whether the bowl of salad was heavy or unwieldy, and that use of "[a] handrail, as recommended by [plaintiff], would require three hands: one to hold the salad bowl, one to hold the wooden door open, and one to hold the handrail."). *But see Marable v. United States*, No. 14cv1206, 2017 WL 6541021, at *5 (S.D. Cal. Dec. 21, 2017) (finding marine consultant expert's opinion testimony that "it is common for experienced ship repairman to go up and down a ladder using one hand on a railing and that a ladder with one handrail removed would not be a safety hazard for the experienced ship repair person, like [plaintiff]" to be "credible and persuasive.").

Simply put, "an expert … must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury.'"

*Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (quoting *Ancho v. Pentech Corp.*, 157 F.3d 512, 519 (7th Cir. 1998)). As Defendant correctly asserts in its Reply brief, Captain Franklin is not a marine engineer, and the reasonableness of the *H. Lee White's* stairway is not at issue in this case. In the Court's opinion, one need not serve in the merchant marine in order to understand the process or potential hazards of traversing a stairway/ladder while carrying something. Rather, the Court finds that issue to be within the province of the jury.

Thus, the Court finds that Captain Franklin's opinion that Plaintiff could not safely climb the ship's stairs carrying materials like the coffee cans to be within the realm of the province of the jury, and thus excluded. The Court also finds that Captain Franklin may not testify that Defendant was "negligent" or created an "unseaworthy" condition because those are legal conclusions. *See Hyland v. HomeServices of America, Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) ("[A] witness may not testify to a legal conclusion."); *United States v. Gordon*, 493 F. App'x 617, 626-27 (6th Cir. 2012) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.") (cleaned up).

26

## C. Whether Captain Franklin Should be Precluded From Offering New Opinions

Defendant argues that Captain Franklin should be barred from expressing any opinions not timely disclosed in his written reports, as required by Fed. R. Civ. P. 26(a)(2)(B), which requires that a retained expert's report contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). Defendant contends that, at his discovery deposition, Captain Franklin first confirmed that his two written reports contain all of the opinions he will express at trial, but then he further, again and again, reserved the right to supplement his opinions going forward:

> Q:      [By Defendant's counsel] Are all of the opinions that you will express at trial contained within these two reports, Exhibit J and Exhibit K?
>
> A:      At this time, yes, but again, I reserve the right to supplement my opinion going forward.

(ECF No. 35-5, Captain Franklin Dep. at p. 59, PageID.1789; *see also id.* at p. 62, PageID.1792 ("So I mean as of right now, at this moment, these are my opinions, but I reserve the right to update my opinions as I receive new information or I receive information or views that I feel I should go back and reassess the material that I have in front of me.").)

27

Defendant argues that, upon Plaintiff's counsel's further examination of Captain Franklin during his deposition, Captain Franklin nevertheless began providing additional opinions, such as that a reduction in crew "can only negatively affect safety [, e]specially when you're not automating systems to take the place of the crew that you're eliminating," and opining that a bag would not be an appropriate piece of equipment to carry the coffee up the stairs. (*See id.* at. pp. 193-94, 203-04, PageID.1923-24, 1933-34.)[2] Defendant argues that the Federal Rules of Civil Procedure do not allow for a blanket reservation to revisit issues without disclosing new opinions and that the Court should not permit Captain Franklin and Plaintiff to engage in "trial by ambush."

Plaintiff first baldly asserts in his Response brief that Captain Franklin did not testify about anything new in his deposition and that Defendant's argument should be dismissed. The Court disagrees and finds that, at least with regard to the manning levels on the ship and use of a bag to carry supplies, that Captain Franklin did offer

---

[2] Defendant also complains that Captain Franklin offered subsequent additional opinions about "what aspect of the witness testimony he relied upon but failed to mention in his report," and "what American Steamship Company representatives should anticipate from the plaintiff's own conduct." (ECF No. 27, Def.'s Mot., PageID.533.)

28

some additional opinions for the first time in his deposition that were not provided in either of his two written reports.[3]

Captain Franklin also asserted more than once during his deposition that he reserved the right supplement his opinion going forward based on new information, and even based on his "re-review" of the materials he has if he "feel[s like he] should go back and reassess the material in front of him." (ECF No. 35-5, Captain Franklin Dep. at pp. 59-62, 245, PageID.1789-92, 1975.)

Plaintiff goes on to argue that if the Court is going to consider this issue, that Defendant failed to engage in the analysis required by the Sixth Circuit Court of Appeals in *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015). Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) … the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Thus, while a Court may issue a lesser sanction, "exclusion of late or undisclosed evidence is the usual remedy for

---

[3] The Court notes that Captain Franklin's opinions regarding the number of crew in the galley (reduced to two crew members) were offered for the first time in his deposition in response to questioning by both Defendant's counsel initially and then by Plaintiff's counsel. (*See* ECF No. 35-5, Captain Franklin Dep. at pp. 28-30, 193-94, PageID.1758-60, 1923-24.).

noncompliance with Rule 26(a)." *Howe*, 801, F.3d at 747. The Sixth Circuit in *Howe* adopted a five-factor test for determining whether to exclude a witness under Rule 37, or impose a lesser sanction: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Howe*, 801 F.3d at 747-48.

Plaintiff argues that consideration of these five factors compels a finding that the alleged untimeliness of any opinions that Captain Franklin disclosed for the first time in his deposition was substantially justified and harmless. Plaintiff contends that Defendant cannot claim surprise by Captain Franklin's new opinions because it had an opportunity to depose Captain Franklin as to those new opinions and thus was able to cure any surprise that might have existed. Plaintiff states that trial in this case has not yet been scheduled, and thus would not be disrupted, and that Captain Franklin's opinion testimony is critical to Plaintiff's case. As to the fifth factor, Plaintiff asserts that Captain Franklin's deposition testimony is "nothing new," and that Plaintiff is therefore not "hiding the ball" or acting in bad faith.

Defendant argues in its Reply brief that it cannot "cure" Captain Franklin's untimely disclosure of new opinions in his deposition because his opinions are, time

and again, a moving target. Captain Franklin first testified that all of his opinions were contained in his two reports, but thereafter offered new opinions during that same deposition, and further testified that he reserved the right to issue new opinions upon re-review of the materials. Defendant states that Plaintiff has failed to offer any reasonable explanation for Captain Franklin's failure to disclose his complete opinions in his two reports.

The Court finds, weighing the five *Howe* factors, that to the extent Captain Franklin is permitted to proffer expert testimony in this case (i.e., to the extent it is reliable and helpful to the jury), he is limited to the opinions expressed on his two reports, and to the additional opinions espoused during his deposition. *See E.E.O.C. v. Freemen*, 626 F. Supp. 2d 811, 822-23 (M.D. Tenn. 2009) (noting that although ordinarily it is improper to consider deposition disclosures as curative of deficiencies in an expert's written report, disclosures of an article as basis for expert's opinion for first time in the expert's deposition did not serve to bar expert's opinion testimony because the employer still had over five months to prepare to cross-examine the expert at trial); *but see MMG Ins. Co. v. Samsung Electronics Am., Inc.*, 293 F.R.D. 58, 61 (D.N.H. 2013) ("Generally … 'Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony,' or the function of expert reports would be 'completely undermined.'")

(quoting *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)). Although Plaintiff fails to offer any explanation or excuse for Captain Franklin's failure to disclose all of his opinions in his two reports, Defendant has had an opportunity to question Captain Franklin as to the opinions set forth in his two reports and during his deposition, and thus cannot claim surprise at this point.

The Court further finds, however, that Captain Franklin is not permitted to proffer any new or additional opinions based on the information that has been provided to him. Discovery is now closed, and the parties have filed motions for summary judgment. It would be unfairly prejudicial to Defendant to permit Captain Franklin to proffer, yet again, more opinion evidence based on the information he has already reviewed and/or had access to. Further it would be unfairly prejudicial to permit Plaintiff to present important expert opinion evidence that Defendant has not had an opportunity to explore and test during discovery.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Exclude or Limit Opinion Testimony of Captain Daniel Franklin (ECF No. 27).

Specifically, the Court **GRANTS** Defendant's motion in part and:

**PRECLUDES** consideration of Plaintiff's unsworn November 30, 2021, declaration as evidence supporting Captain Franklin's opinion testimony;

**EXCLUDES** Captain Franklin's expert opinion testimony that Plaintiff could not safely climb the ship's stairs carrying materials like the coffee cans, as that testimony would be within the common sense of the jury; and

**EXCLUDES** testimony by Captain Franklin that Defendant was "negligent" or created an "unseaworthy" condition, because those are legal conclusions.

The Court **FURTHER GRANTS** Defendant's motion in part and **PRECLUDES** Captain Franklin from offering any opinions other that those contained in his two reports and/or espoused during his discovery deposition.

Defendant's motion is otherwise **DENIED**.


s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: August 14, 2023