UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUSSEIN AL QARI,

        Plaintiff,                  Case No. 21-cv-10650

v.                                          Paul D. Borman
                                          United States District Judge

AMERICAN STEAMSHIP COMPANY,

        Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENSE EXPERT BRIAN J. HALL (ECF NO. 25)**

      This is a maritime personal injury action arising from injuries Plaintiff Hussein Al Qari alleges he suffered while working as a Steward's Assistant aboard Defendant American Steamship Company's bulk carrier, the *M/V H. Lee White*. Plaintiff asserts claims for negligence under the Jones Act, 46 U.S.C. § 30101, *et seq.*, unseaworthiness under the general maritime law of the United States, and for maintenance and cure benefits under general maritime law.

      Now before the Court is Plaintiff's Motion to Exclude Certain Opinions of Defense Expert Brian J. Hall (ECF No. 25). The motion has been fully briefed. The Court does not believe that oral argument will aid in its disposition of this matter;

therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons that follow, the Court DENIES Plaintiff's Motion to Exclude Certain Opinions of Defense Expert Brian J. Hall.

## I. BACKGROUND

Plaintiff Hussein Al Qari was employed as a Steward's Assistant aboard Defendant American Steamship Company's vessel, the *M/V H. Lee White*. Plaintiff alleges that on November 5, 2020, he was climbing a flight of stairs from one level of the vessel to another, while carrying a box containing six jars of coffee grounds. He had one hand on the handrail and the other hand on the box. The box started to slip, and as Plaintiff let go of the handrail to try to catch the box, he lost his balance, and fell. Plaintiff claims he was seriously injured as a result of falling down the stairs.

On March 24, 2021, Plaintiff filed this lawsuit against Defendant based on his November 5, 2020, fall and injuries, asserting claims for (1) Jones Act Negligence, 46 U.S.C. § 30101, *et seq.* (2) Unseaworthiness under the general maritime law of the United States, and (3) Intentional/Negligent Failure to Provide Maintenance and Cure under general maritime law. (ECF No. 1, Compl.)

2

Defendant retained Captain Brian J. Hall as its liability expert. Captain Hall has held a U.S. Coast Guard officer's license for nearly 40 years, and currently holds an unlimited master's license and is Standard of Training Certification and Watchkeeping (STCW) 95 certified. (ECF No. 25-2, Captain Hall Report.) Captain Hall opines in his written report that:

> The MV H. LEE WHITE had a safety management as well as safety training program in place and embraced sound maritime safety practices as evidenced by the Stop-Talk-Proceed program for conducting safety briefings which is an important component of American Steamship Company's Safety and Training Policy. Mr. Al Qari was an experienced and credentialed mariner with over 10 years of experience. He had received training in safe working practices at the SIU training center, through STCW training and as part of ASC ongoing safety refresher training. He had performed the routine task of walking up stairs while carrying supplies numerous times during his 10 years as a mariner. As an experienced mariner with shipboard experience he was aware of the need to exercise caution when carrying supplies up and down stairs as well as the shipboard adage **"one hand for yourself and one hand for the ship."** Mr. Al Qari chose to carry the coffee cans in a box. If he felt that the box was too difficult to carry he could have placed the coffee cans in a bag, backpack, carried individual cans and/or made multiple trips. This was a routine and common task and not an emergency which required that the task be completed quickly.
>
> Mr. Al Qari fell as a result of his unsafe action in carrying a box up a stairway and that had slipped out of his hand. As a result he let go of the handrail, lost his balance and fell.
>
> It is my professional opinion that the MV H. LEE WHITE was not being operated in an unsafe, unseaworthy or negligent manner. It is also my professional opinion that the MV H. LEE WHITE, its crew, and its

equipment were reasonably fit for their intended service and did not contribute to Mr. Al Qari's injuries.

(*Id.* PageID.461-62.) Captain Hall noted, in support of his opinion, in part that:

- The MV H. LEE WHITE was in compliance with its [U.S. Coast Guard] USCG Certificate of Inspection.
- The MV H. LEE WHITE was in compliance with its [American Bureau of Shipping] ABS Classification.

*********************************

The MV H. LEE WHITE was in compliance with it's [sic] Certificate of Inspection as well as its ABS Classification. Walking up interior stairways and carrying handheld supplies is a routine and common task onboard a ship and is addressed by the USCG physical examination by a medical practitioner. The USCG 719K Medical Application Demonstration of Physical Ability requires mariners to be able to climb up and down vertical ladders and stairways and to lift at least a 40 pounds load off the ground and to carry, push or pull the same load. Mr. Al Qari was found medically fit and physically fit by the USCG.

With regard to the report of Mr. John Morse, P.E. the MV H. LEE WHITE was in compliance with it's [sic] USCG Certificate of Inspection as well as ABS Classification. OSHA regulations regarding construction are not applicable to USCG Certified US Flag vessels.

(*Id.* at PageID.460, 461.)

Plaintiff filed a motion to exclude certain opinions of defense expert Captain Brian J. Hall. (ECF No. 25, Pl.'s Mot.) Specifically, Plaintiff seeks to exclude, pursuant to Fed. R. Civ. P. 401 and 403, Captain Hall's "opinions, facts cited, or other observations" that (1) "[t]he H. LEE WHITE was in compliance with its USCG

4

Certificate of Inspection" and (2) "[t]he H. LEE WHITE was in compliance with its ABS Classification." Plaintiff contends that these "opinions, facts cited, or other observations" are irrelevant and unfairly prejudicial because they have nothing to do with the actual facts of Plaintiff's accident and do not relate to any issue in the case.

Defendant filed a Response in opposition to Plaintiff's motion arguing that Plaintiff provides an unreasonably narrow and restrictive reading of his claims at issue in this lawsuit. (ECF No. 30, Def.'s Resp.) Plaintiff claims that Defendant was negligent and its vessel was unseaworthy, and Defendant contends that Captain Hall's opinion that "[t]he MV H. LEE WHITE was not being operated in an unsafe, unseaworthy or negligent manner," based in part on the fact that the vessel was in compliance with its Certificate of Inspection and class certification, is directly relevant to rebut Plaintiff's claims.

Plaintiff filed a Reply brief in support of his motion. (ECF No. 37, Pl.'s Reply.) He contends that he does not challenge the vessel's physical structure or claim that it did not comply with applicable marine safety laws and classification status, and thus Captain Hall's opinions that the vessel was in compliance with its USCG Certificate of Inspection and ABS Classification are not relevant and should be excluded.

5

## II. STANDARD

Where a party challenges the testimony of an expert witness, Federal Rule of Evidence 702 triggers a court's "gate-keeping role" to determine the admissibility of that testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;
>
> c) the testimony is the product of reliable principles and methods; and
>
> d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Simply stated, "[f]or expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) [his] testimony to be relevant; and [(3) his] testimony to be reliable." *Osborn v. Griffin*, 865 F.3d 417, 452 (6th Cir. 2017) (quoting *United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017)). In *Daubert*, the United States Supreme Court identified several factors that courts may consider

in assessing whether an opinion is reliable, including whether the expert's methods are testable, subject to peer review, or "generally accepted." 509 U.S. at 592-95. Yet the *Daubert* factors "do not constitute 'a definitive checklist or test'" and do not apply in every case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 593). "Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142 (emphasis in original).

The party offering the expert has the burden of proving admissibility of the expert's opinion by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10. "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (internal quotation marks omitted) (quoting Fed. R. Evid. 702 Advisory Committee's Note, 2000 Amend.). In general, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). However, the court is not "required to admit expert testimony 'that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion

7

proffered.'" *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Newly proposed amendments to Rule 702 are set to go into effect on December 1, 2023, pending approval by the United States Supreme Court, and if Congress does not enact legislation that modifies or rejects the changes. Rule 702, as it is to be amended, will read:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if <u>the proponent has demonstrated by a preponderance of the evidence that</u>:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the ~~expert has reliably applied~~ <u>expert's opinion reflects a reliable application of</u> the principles and methods to the facts of the case.

Fed. R. Evid. 702 (as proposed). The underlined and struck-through portions of the Rule reflect the changes being made by the Advisory Committee. The Committee explained that these changes are not substantive, but rather clarify how the Rule was meant to be applied since it was first amended in 2000. "The new language makes clear that the burden is on the proponent to demonstrate to the Court that an expert's

8

testimony more likely than not meets the four enumerated requirements for admissibility." *In re Anderson*, No. 15-21681, 2023 WL 2229355, at *3 (W.D. Tenn. Jan. 20, 2023). "Though not yet in effect, Rule 702 in its newest form and the associated Committee Notes may be relied upon and cited to as persuasive authority 'because, as the Committee explains, they are "simply intended to clarify" how Rule 702 should have been applied all along.'" *Id.* (citing *Don't Say Daubert – Revising Rule 702*, WINSTON & STRAWN LLP, June 29, 2022, https://www.winston.com/en/product-liability-and-mass-torts-digest/dont-say-daubert-reviving-rule-702.html [https://perma.cc/55ZC-NFLP].); *see also Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283-84 (4th Cir. 2021) (relying on the proposed amendments to Rule 702). This Court will similarly observe the proposed amendments to Rule 702.

Under normal circumstances, a district court may resolve a *Daubert* motion without holding an evidentiary hearing. *Nelson*, 243 F.3d at 248-29. A hearing is required only if the record is inadequate to decide the motion. *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). In the instant case, the Court concludes that an evidentiary hearing is not required.

### III. DISCUSSION

In the present motion, Plaintiff does not contend that Defendant's liability expert, Captain Brian Hall, is unqualified as an expert.[1] Rather, Plaintiff seeks only to exclude certain observations and opinions of Captain Hall – that Defendant's vessel, the *M/V H. Lee White*, was in compliance with its U.S. Coast Guard (USCG) Certificate of Inspection and its American Bureau of Shipping (ABS) classification – asserting those observations and opinions are irrelevant and unfairly prejudicial pursuant to Fed. R. Civ. P. 401 and 403. Plaintiff argues that these opinions have nothing to do with what caused Plaintiff to fall, pointing to Captain Hall's deposition testimony wherein he agreed that the *M/V H. Lee White's* compliance with USCG standards or ABS classification did not have anything to do with the cause of Plaintiff's fall:

> Q: [by Plaintiff's attorney] So whether or not the *H. Lee White* was in compliance with the United States Coast Guard inspection would have nothing to do with what caused [Plaintiff] to fall; correct?
>
> A: I would agree with that, but whenever I hear in a Complaint that somebody says a vessel is unseaworthy I always like to point out that it was within its Coast Guard certificate of inspection.

---

[1] Plaintiff confirms in his Reply brief that he is not challenging Captain Hall's qualifications as an expert in this case. (ECF No. 37, Pl.'s Reply, PageID.1985 ("Al-Qari is not challenging the admissibility of Captain Hall's opinions on the basis of his qualifications.").)

\*\*\*

Q: My question is whether or not it was, whether or not the *White* was in compliance with the ABS classification has nothing to do with what caused …[Plaintiff] to fall unless you're telling me there's something wrong with the rail or step?

A: No, no, no, no. I am not telling you there was anything wrong with the rails. What I was citing is that the material condition of the ship had nothing to do with why he fell.

Q: So the ABS classification has nothing to do with why he fell; correct?

A: It didn't contribute to it.

(ECF No. 35-4, Hall Dep. at pp. 80-82, PageID.1628-30.)

Defendant argues in its Response brief that Plaintiff is taking an unduly narrow and restrictive reading of his claims against Defendant in this case. Defendant states that Plaintiff's claims include a claim for unseaworthiness against Defendant. Under general maritime law, a vessel owner has an absolute duty to furnish a ship, crew, and appurtenances reasonably fit for their intended service. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001) ("Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea.") (citation omitted). Defendant explains that Captain Hall opined that "[t]he MV H. LEE WHITE was not being operated in

11

an unsafe, unseaworthy, or negligent manner" and that the vessel, its crew, and its equipment were reasonably fit for their intended service, and that he bases those opinions in part on the vessel being in compliance with its USCG Certificate of Inspection and ABS class certification. (*See* ECF No. 25-2, Captain Hall Report, PageID.461-62.)

As Defendant explains in its Response brief, federal statutory law requires a vessel like the *M/V H. Lee White* to be inspected by the U.S. Coast Guard. *See* 46 U.S.C. § 3301, Vessels Subject to Inspection. The inspection process ensures that a vessel is of a structure suitable for its service, and that it "is in a condition to be operated with safety to life and property and complies with applicable marine safety laws and regulations." 46 U.S.C. § 3305(a)(1)(A), (E), (F). The U.S. Coast Guard issues a Certificate of Inspection following a determination that a vessel is in compliance with the requirements of applicable laws and regulations, *see* 46 U.S.C. § 3309(a), and a certificated vessel may not operate without a Certificate of Inspection, nor may a vessel operate without complying with the requirements of that certificate. *See* 46 U.S.C. § 3313(a); 46 U.S.C. § 8101(d) (prohibiting vessel operation "without having in its service the complement required in the certificate of inspection"). Federal law similarly recognizes the role of the American Bureau of Shipping as the classification society authorized to conduct inspections and

examinations of vessels. *See* 46 U.S.C. § 3316, Classification Societies. That agency maintains rules for the classification of vessels, including specific rules governing bulk carriers engaged in Great Lakes service, such as the *M/V H. Lee White*.

The Court finds that Captain Hall's observations and opinions that the *M/V H. Lee White* was in compliance with its USCG Certificate of Inspection and its ABS Classification are relevant and will not be excluded. Evidence is relevant for purposes of Rule 702 when there is a "factual issue in dispute that expert testimony can clarify." *LaVictor*, 848 F.3d at 442 (citing *Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 527-28 (6th Cir. 2014)). As the Sixth Circuit Court of Appeals has reiterated, "the relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Id.* (quoting *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196-97 (9th Cir. 2014)). Relevancy under Rule 702 should be "broadly interpreted" and "the rejection of expert testimony is the exception, rather than the rule." *Id.* (quoting *In re Scrap Metal*, 527 F.3d at 529-30); *see also Mactec, Inc. v. Bechtel Jacobs Co., LLC*, 346 F. App'x 59, 77 (6th Cir. 2009) (relevancy requirement should be read broadly) (quoting *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998)).

Captain Hall's observations that the *M/V H. Lee White* met the requirements, conditions, and qualifications of the certifications issued by federal regulators and

13

classification societies is relevant to explain his opinion that the vessel was seaworthy and to rebut Plaintiff's claims that Defendant operated the vessel in an unsafe, unseaworthy, or negligent manner, or that the vessel, its crew, or its equipment were not reasonably fit for their intended service. Plaintiff does not contend that these observations are incorrect or otherwise challenge the factual bases of these opinions. Finally, while Plaintiff purports to assert a challenge pursuant to Fed. R. Civ. P. 403, he wholly fails to provide any argument as to how these observations are unfairly prejudicial.

Accordingly, Plaintiff's motion will be denied.

### IV.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion to Exclude Certain Opinions of Defense Expert Brian J. Hall (ECF No. 30).

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: August 31, 2023