UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUSSEIN AL QARI,

               Plaintiff,                  Case No. 21-cv-10650

v.                                     Paul D. Borman
                                     United States District Judge

AMERICAN STEAMSHIP COMPANY,

               Defendant.

_____/

## OPINION AND ORDER
## (1) DENYING PLAINTIFF HUSSEIN AL QARI'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT (ECF NO. 24), AND
## (2) GRANTING DEFENDANT AMERICAN STEAMSHIP COMPANY'S
## MOTION FOR SUMMARY JUDGMENT (ECF NO. 28)

This is a maritime personal injury action arising from injuries Plaintiff Hussein Al Qari alleges he suffered while working as a Steward's Assistant aboard Defendant American Steamship Company's bulk carrier, the *M/V H. Lee White*. Plaintiff asserts claims for (1) negligence under the Jones Act, 46 U.S.C. § 30101, *et seq.*, (2) unseaworthiness under the general maritime law of the United States, and (3) maintenance and cure benefits under general maritime law.

Now before the Court are (1) Plaintiff's Motion for Partial Summary Judgment as to Liability and Causation Under the Jones Act and Unseaworthiness (ECF No. 24), and (2) Defendant's Motion for Summary Judgment (ECF No. 28).

Both motions have been fully briefed. The Court has carefully considered the parties' submissions and does not believe that oral argument will aid in its disposition of this matter; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons that follow, the Court DENIES Plaintiff's Motion for Partial Summary Judgment as to Liability and Causation Under the Jones Act and Unseaworthiness, and GRANTS Defendant's Motion for Summary Judgment.

## I.      BACKGROUND

### A. Factual Background

#### 1.  Plaintiff Hussein Al Qari

Plaintiff Hussein Al Qari has served as a merchant mariner for more than ten years on the Great Lakes, with most of his professional experience as either a member of the Galley Department or in the Deck Department as part of the unlicensed crew. (ECF No. 35-1, Pl.'s Dep. at pp. 25-27, PageID.1263-65.) Plaintiff had served on Defendant American Steamship Company's vessel, the *M/V H. Lee White*, for multiple navigating seasons. (*Id.* at pp. 26, 55, PageID.1264, 1293.)

Plaintiff was employed as a Steward's Assistant aboard the *M/V H. Lee White* in or around November 2020. His responsibilities as a Steward's Assistant included the ordinary duties of the Galley Department, including cooking, cleaning, stocking

2

items, and sanitation. (*Id.* at p. 27, PageID.1265.) These tasks included bringing dry goods up to the galley from a storage locker in the engine room of the vessel, which was located one deck below the galley. (*Id.* at pp. 51-53, PageID.1289-91.)

Plaintiff testified that he performed this work – carrying supplies from the engine room storage locker up the stairs to the galley to restock the galley – "[a]lways, all the time," and that he considered it "usual" and routine work and an ordinary part of his responsibilities as a Steward's Assistant. (*Id.* at pp. 56-57, 73, 106, PageID.1294-95, 1311, 1344.) He would decide what and how much of the supplies he needed for the week, including replacement goods such as paper towels, cleaning supplies, and coffee, and he would decide how he was going to bring those supplies up the stairs to the galley. (*Id.* at pp. 57-58, PageID.1295-96.)

## 2. The November 5, 2020, accident

Plaintiff alleges that on November 5, 2020, he went to the engine room locker to pick up some supplies for the galley. (ECF No. 35-1, Pl.'s Dep. at p. 46, PageID.1284.) After gathering the supplies, Plaintiff determined that he would need to make multiple trips. (*Id.* at p. 78, PageID.1316.) Plaintiff testified that there was nothing unusual or dangerous about the supplies he gathered, that he was not in a rush, nothing prevented him from making multiple trips to carry the supplies, and that he never complained to anyone about having to carry the supplies up the stairs

3

to the galley. (*Id.* at pp. 72, 78, PageID.1310, 1316.) He decided to carry a cardboard box containing six plastic coffee containers to the galley. (*Id.* at pp. 46, 60-61, PageID.1284, 1298-99.) Plaintiff stated that the Ship's cook had previously instructed him "when you go to pick up the supply [sic] including the coffee, take all of them, take the box of the coffee." (*Id.* at p. 104, PageID.1342.)

Plaintiff proceeded to climb the stairs with one hand on the stairway's railing while carrying the box containing six cans of coffee grounds using his other hand. (*Id.* at pp. 15, 83, PageID.1253, 1321.) Plaintiff states that, after going up about five to eight steps of the stairs, the box with the coffee started to slip or fall and so he let go of the handrail to try to "catch" the box. He then lost his balance and fell down the stairs. (*Id.*) Plaintiff testified that he tried to catch the box because he was afraid it could hit another crew member potentially climbing the stairs behind him, although he did not see or hear anyone ahead of or behind him. (*Id.* at pp. 81-82, PageID.1319-20.)

Plaintiff stated at his deposition that there was nothing wrong with the box of coffee, that it was not broken or falling apart, it was not too heavy, and that this is the way he has "always" carried the coffee up the stairs to the galley. (*Id.* at pp. 60-61, 78-79, PageID.1298-99, 1316-17.) Plaintiff stated that the lighting in the engine room was good that day, that there was nothing wrong with the stairs themselves,

4

the stairs were not slippery, he was well rested, and that his fall was just an accident.

(*Id.* at pp. 49, 81, 90, PageID.1287, 1319, 1328.) Specifically, Plaintiff testified at

his deposition:

> Q:    [by Defendant's attorney] Would you agree that your fall was just an accident?
>
> A:    Yes
>
> Q:    There's nothing wrong with the boat or the crew.
>
> A:    No
>
> Q:    Did you ever complain to anyone, officers, office, union, coast guard, anyone about any aspect of your work at American Steamship Company?
>
> A:    No, I did not.

(*Id.* at p. 90, PageID.1328.)

Plaintiff alleges that he was seriously injured as a result of falling down the

stairs.  He was found, after the accident, by another crew member, and he then

departed the vessel at the next port of call to seek medical attention. (*Id.* at pp. 64-

65, PageID.1302-03.)  Plaintiff has not worked since the accident. (*Id.* at p. 100,

PageID.1338.)

### 3. Defendant provides for Plaintiff's medical care following the accident

Defendant states that, shortly after the accident, it assigned Plaintiff a professional nurse case manager from Medical Solution Services (MSS), which serves as Defendant's remote medical advisory service, providing nurse case management service and care coordination for mariners who may fall ill or become injured while aboard a vessel. Nikki Cremeans, MSS Care Coordination Manager for Defendant, was assigned to be Plaintiff's nurse case manager.

On December 7, 2020, Plaintiff's counsel sent a letter to Nurse Cremeans, advising that he represented Plaintiff and stating:

> Please do not contact [Plaintiff] again. I will send a copy of this letter to American Steamship Company and request they reimburse Laura Busen a a [sic] local Care Coordinator Manager. She is more familiar with our Michigan doctors.

(ECF No. 28-3, PageID.670.)

Ms. Busen first met with Plaintiff on December 21, 2020, and appears to have worked with Plaintiff since then through at least the filing of Defendant's December 1, 2022, motion for summary judgment. (*See* ECF No. 28-6, Busen Invoices, PageID.678.)

On January 31, 2021, counsel for Defendant responded to Plaintiff's counsel's December 7, 2020 letter to Nurse Cremeans, stating, in relevant part:

6

We are in receipt of your letter, dated December 7, 2020, addressed to Nikki Cremeans, Care Coordination Manager for Medical Solution Services ("MSS")….

In your letter, you advise Ms. Cremeans that you represent Hussein Al Qari. You instruct her not to contact him again, and indicate some future intent to ask American Steamship Company to reimburse a care coordination manager of your choosing.

As you may know, MSS serves as American Steamship Company's remote medical advisory service. In addition to that function, MSS also provides nurse case management and care coordination for mariners who may fall ill or be injured while aboard American Steamship Company vessels. This is the role that Ms. Cremeans was fulfilling with respect to Mr. Al Qari's care. She would coordinate his visits with his doctors, ensure that he was able to and did attend his appointments, and then help facilitate the reproduction of medical records relating to those appointments. If Mr. Al Qari (or any other mariner, for that matter) needed a referral to another physician or provider, Ms. Cremeans would have been in a position to help facilitate the referral.

American Steamship Company views nurse case management and care coordination as one of the most important and effective methods of ensuring that mariners allegedly ill or injured receive the care they need. The involvement of the care coordination manager allows the mariner to focus on his or her recuperation, rather than the logistics of setting appointments. We understand, however, that we cannot force Mr. Al Qari (or any other mariner) to accept this assistance. To that end, if it is truly Mr. Al Qari's intention to forgo nurse case management and care coordination, we will abide by your instruction that MSS personnel no longer contact Mr. Al Qari. **The expense of a nurse case manager and care coordinator, however, is not a component of cure, in that the nurse case manager and care coordinator is not involved in the provision of medical treatment. As such, American Steamship Company will not pay for or reimburse the cost of a nurse case manager or care coordinator handpicked by a mariner's attorney. (If you have legal authority that you believe suggests that**

**American Steamship Company would be legally obligated to pay for a nurse case manager or care coordinator of your choosing, please submit that authority to us and we will consider it in due course.)**

(ECF No. 28-4, 1/31/2021 Letter, PageID.672-73 (emphasis added).)[1]

Ms. Busen began submitting invoices to Defendant for payment for her services.

On March 31, 2021, Plaintiff's counsel emailed Defendant's counsel, stating that Plaintiff "was not comfortable" with Nurse Cremeans, who is located in Florida. He claims she was "not familiar with the better Michigan doctors, let alone doctors who don't speak Arabic," that Ms. Busen, who "is from the west side of Detroit" is "able to attend appointments and [is] familiar with the good doctors who speak

---

[1] As discussed more fully *infra*, the Sixth Circuit Court of Appeals has explained:

> Maintenance refers to a shipowner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill while in service of the ship, while cure alludes to the duty to provide necessary medical care and attention. A shipowner is liable to pay maintenance and cure to the point of maximum cure, that is, when the seaman's affliction is cured or declared to be permanent. Finally, a shipowner must also pay a stricken seaman's unearned wages at least so long as the voyage is continued.

*Musleh v. American Steamship Co.*, 766 F. App'x 214, 216 (6th Cir. 2019) (quoting *Blainey v. Am. S.S. Co.*, 990 F.2d 885, 887 (6th Cir. 1993) (citations and quotation marks omitted)).

8

Arabic," and that he expects Defendant to pay for Ms. Busen's case management services provided to Plaintiff. (ECF No. 28-5, Emails, PageID.675-76.)

Defendant's counsel responded that same day by email, stating, in part, that:

**The nurse case manager is not providing any medical treatment, and as such, does not come within the scope of the cure obligation. If you disagree, I invite you to point me to the law that holds otherwise**. In that same vein, I invite you to point me to what medical treatment she herself has provided to Mr. Al Qari to move him from his current condition to medical improvement….

As set out in our various correspondence on this subject, we are prepared to evaluate any new legal or factual information you provide that might cause us to reconsider this position. In the absence of such information, however, American Steamship Company will not pay for your nurse case manager.

(*Id.* (emphasis added))

Defendant asserts that Plaintiff never provided the requested legal or factual information, and that Ms. Busen has billed Plaintiff approximately $70,000 for services purportedly rendered through the date of the filing of the motion for summary judgment.

### B. Procedural Background

On March 24, 2021, Plaintiff filed this lawsuit against Defendant based on his November 5, 2020, fall and injuries, asserting claims for (1) Jones Act Negligence, 46 U.S.C. § 30101, *et seq.*, (2) Unseaworthiness under general maritime law, and (3)

9

Intentional/Negligent Failure to Provide Maintenance and Cure under general maritime law. (ECF No. 1, Compl.)

On December 1, 2022, Plaintiff and Defendant filed separate motions for summary judgment.

Plaintiff filed his Motion for Partial Summary Judgment as to Liability and Causation Under the Jones Act and Unseaworthiness. (ECF No. 24, Pl.'s Mot.) Plaintiff argues that the undisputed deposition testimony of him and his retained expert, Captain Daniel Franklin, establishes liability for negligence under the Jones Act because (1) Defendant did not tell Plaintiff and/or his supervisor that a backpack was available for Plaintiff to use when bringing up the coffee to the galley; (2) Defendant did not train Plaintiff on a reasonably safe method for bringing up the coffee; and (3) Defendant did not provide Plaintiff with the proper equipment to perform this task. Plaintiff also argues that there is no genuine of issue of material fact that the vessel was unseaworthy because (1) the carton provided to bring the coffee up to the galley was not reasonably fit for its intended use; (2) Defendant failed to provide Plaintiff with the proper equipment (i.e., the backpack); (3) Plaintiff was instructed to use unsafe methods to bring the coffee to the galley; and (4) Plaintiff's supervisor was improperly trained with respect to this task.

10

Defendant filed a Response in opposition to Plaintiff's motion for partial summary judgment, arguing that Plaintiff's motion fails, in part, because Plaintiff admitted in his deposition that Defendant did not do anything wrong that caused or contributed to Plaintiff's accident. (ECF No. 34, Def.'s Resp.) Defendant further argues that Plaintiff's motion mischaracterizes witnesses' testimony, improperly relies on his inadmissible declaration and his liability expert's unreliable opinion testimony, and that Defendant, not Plaintiff, is entitled to summary judgment, for the reasons stated in Defendant's Motion for Summary Judgment.

Plaintiff filed a Reply brief in support of his Motion for Partial Summary Judgment, relying primarily on the parties' prior briefing and arguing that his prior declaration and Captain Franklin's testimony are admissible. (ECF No. 36, Pl.'s Reply.)

Defendant filed its Motion for Summary Judgment on all of Plaintiff's claims on December 1, 2022. (ECF No. 28, Def.'s Mot.) Defendant argues that Plaintiff admits that no conduct on the part of Defendant, its vessel, or its crew caused or contributed to Plaintiff's accident. Defendant further argues that Plaintiff cannot establish the necessary elements of his Jones Act and unseaworthiness claims, or that he has not received all of the maintenance and cure benefits to which he may be legally entitled.

11

Plaintiff filed a Response in opposition to Defendant's motion for summary judgment. (ECF No. 31.) Plaintiff contends that his prior deposition testimony does not constitute a judicial admission requiring the Court to grant summary judgment against him. Plaintiff further argues that he established the necessary elements of his Jones Act and unseaworthiness claims, and that he has established that he is entitled to cure benefits for Ms. Busen's nurse case manager services.

Defendant filed a Reply brief in support of its motion for summary judgment, contending that Plaintiff's prior deposition testimony does constitute a binding judicial admission dispositive of his Jones Act and unseaworthiness claims. Defendant also argues that it cannot be held liable for the ordinary, routine work of a seaman.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute

12

is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff."

*Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted).

"The standards … for summary judgment do not change when, as here, 'both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558-59 (6th Cir. 2009).

## III.   DISCUSSION

### A. Whether Plaintiff's Deposition Testimony Constitutes a Binding Judicial Admission

Defendant first argues in its Motion for Summary Judgment that Plaintiff's admission in his deposition that Defendant did nothing wrong that caused or contributed to his accident is a threshold issue that allows the Court to summarily dispose of Plaintiff's Jones Act and unseaworthiness claims as a matter of law.

14

Defendant contends that, to establish a Jones Act claim, Plaintiff must demonstrate negligence on the part of Defendant, 46 U.S.C. § 30104; *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 258 (6th Cir. 2001), and to establish a claim of unseaworthiness, Plaintiff must demonstrate that Defendant's vessel, her appurtenances, or her crew were not reasonably fit for their intended service. *See Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960). Defendant argues that the following admissions by Plaintiff in his deposition establish that he cannot demonstrate either claim:

Q:   [by Defendant's attorney] The crew aboard the *White* at the time of the accident, were they good crew members?

A:   Yes.

Q:   Were they capable, they could do their jobs well?

A:   I think so.

Q:   Would you agree that your fall was just an accident?

A:   Yes.

Q:   There's nothing wrong with the boat or the crew?

A:   No.

Q:   Is there anything you think American Steamship Company did wrong that caused or contributed to your accident?

A:   No.

15

(ECF No. 35-1, Pl.'s Dep. 90, PageID.1328.)

Plaintiff argues in his Response brief that his deposition testimony does not require judgment for Defendant because that testimony constitutes merely an evidentiary admission, not a judicial admission, citing *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat the testimony as an evidentiary admission."). Plaintiff states that an evidentiary admission does not preclude contrary proof to dispute a fact, citing *Davis v. Echo Valley Condominium Association*, 349 F. Supp. 3d 645, 653 (E.D. Mich. 2018) (citation omitted), *aff'd*, 945 F.3d 483 (6th Cir. 2020). Plaintiff further argues that the deposition testimony at issue – that in his opinion Defendant did nothing wrong – is more properly considered a legal conclusion, and that legal conclusions are rarely considered to be binding judicial admissions, citing in part *Pierson v. Ford Motor Company*, No. C 06-6503 PGH, 2008 WL 7074289, at *2 (N.D. Cal. Oct. 3, 2008), as stating that allegations regarding "negligence" were a legal conclusion or opinion.

A judicial admission generally arises by way of factual assertions by attorneys in pleadings, stipulations, statements in pretrial orders, and by responses to requests

16

to admit "which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *See Cadle Co. II, Inc. v. Gasbusters Prod. I Ltd. P'ship*, 441 F. App'x 310, 312-13 (6th Cir. 2011) (quoting *In re Fordson Eng'g Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)). "In order to qualify as judicial admissions, an attorney's statements must be deliberate, clear and unambiguous." *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997). "Because of their binding consequences, judicial admissions generally arise only from deliberate voluntary waivers that expressly concede for the purposes of trial the truth of an alleged fact." *Id.* (quoting *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975)).

Evidentiary admissions, on the other hand, "are mere evidence, are not conclusive, and may be contradicted by other evidence." *In re Wood*, No. 18-32555, 2021 WL 3640612, at *10 (W.D. Ky. Aug. 17, 2021) (citing *In re Applin*, 108 B.R. 253, 258 (Bankr. E.D. Cal. 1989)); *see also Davis*, 349 F. Supp. 3d at 653 ("An evidentiary admission does not preclude contrary proof to dispute a fact, and it certainly would not serve as a bar to [the expert's] testimony.") (citing *Cadle Co.*, 441 F. App'x at 313).

Courts are more willing to treat as judicial admissions statements by counsel, rather than statements by a party. *See Lee v. Smith & Wesson Corp.*, 760 F.3d 523,

17

528 (6th Cir. 2014) (finding that plaintiff's deposition testimony does not constitute a judicial admission because "[a] tort plaintiff should be able to testify honestly to his memory of what happened and still have his lawyer argue that on the evidence as a whole it is more probable than not that the memory was faulty."). While the U.S. Sixth Circuit Court of Appeals has found in some cases that "admissions made during a deposition, absent exceptional circumstances, have been held to be binding on the parties as a judicial admission and cannot be challenged in the trial court or on appeal," *Cadle Co.*, 441 F. App'x at 313 (citing *Maynard v. Brewer*, 787 F.2d 591, at *1 (6th Cir. Mar. 4, 1986) (Table order) (holding that a "blatant judicial admission by a plaintiff in his deposition that a jailer did not assault him, absent exceptional circumstances … [was] binding on the parties.")), the Sixth Circuit has also stated that judicial admissions typically concern only matters of fact, and that the court is reluctant to treat statements that constitute opinions and legal conclusions as binding judicial admissions. *See MacDonald*, 110 F.3d at 341.

In *MacDonald*, several university students were either killed or injured during an automobile accident en route to a debate tournament. The plaintiffs sued the university and its employees, including the driver of the university van, and General Motors. During his opening statement, General Motors's counsel remarked that the driver "didn't do anything wrong in our estimation," "we are not suggesting that [the

18

driver] was negligent," and "[i]t was an accident not the result of negligence or fault of General Motors or anybody else." *Id.* at 339-40. The plaintiffs argued that these statements were judicial admissions by General Motors that the driver and the university were not negligent. Both the district court and the Sixth Circuit disagreed. The Sixth Circuit stated that "[d]eterminations of negligence and proximate causation require the application of rules of law to complex factual patterns," and "[s]ince [defendant's counsel's] statements dealt with legal conclusions (i.e., whether Voight was negligent and whether he caused the accident), they do not … constitute binding judicial admissions." *Id.*

The Court finds that Plaintiff's statements in his deposition as to the cause of his fall and the fault of Defendant (and thus Defendant's alleged negligence and unseaworthiness) are opinions and legal conclusions and thus not binding judicial admissions barring Plaintiff's Jones Act and unseaworthiness claims, but rather are considered evidentiary admissions. *See MacDonald*, 110 F.3d at 341. Unlike the deposition testimony at issue in *Maynard* – where the plaintiff admitted in his deposition that the jailer did not assault him (a factual issue) – Plaintiff's testimony at issue in this case – that he does not think Defendant did anything wrong that caused or contributed to his accident, and thus by implication that Defendant was

19

not negligent – more closely involves a legal conclusion or opinion.[2] *See Lee*, 760 F.3d at 528 ("A tort plaintiff should be able to testify honestly to his memory of what happened and still have his lawyer argue that on the evidence as a whole it is more probable than not that the memory was faulty."); *Keller*, 58 F.3d at 1198 n. 8.

### B. Plaintiff's Jones Act Claim (Count I)

Under the Jones Act, a seaman may recover damages for personal injury caused by a shipowner's negligence. 46 U.S.C. § 30104 ("A seaman injured in the course of employment … may elect to bring a civil action at law, with the right of trial by jury, against the employer…."); *see Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 907 (6th Cir. 2006). The Jones Act provides that seamen are afforded rights under the Jones Act parallel to those given to railway employees under the Federal Employees Liability Act (FELA), 45 U.S.C. § 51 *et seq. See* 46 U.S.C. § 30104 ("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section."). The FELA provides, in pertinent part, for liability for injury or death "resulting in whole or in

---

[2] The Court finds that *Cadle Co.* is distinguishable. In that case, the Sixth Circuit found that the district court did not abuse its discretion when it found that statements made by a creditor in an amended complaint in a prior adversary proceeding, which statements were confirmed in the deposition of a representative of plaintiff in the present proceedings, and which were stipulated to by plaintiff's counsel, were judicial admissions. *Cadle Co.*, 441 F. App'x at 313-15.

part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51.

A Jones Act "plaintiff asserting a cause of negligence against [his] employer must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Hardyman*, 243 F.3d at 258 (quotations and citations omitted). "[U]nder the Jones Act, an employer has a duty to provide a safe workplace for its employees, and to prevail under the Jones Act, a 'plaintiff must show that her employer [breached this duty by] failing to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known." *Churchwell*, 444 F.3d at 907 (quoting *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 449-50 (6th Cir. 2001)). Negligence is determined under the normal ordinary prudence standard, and the defendant must breach a duty to protect against foreseeable risks of harm. *Rutherford v. Lake Mich. Contractors, Inc.*, 28 F. App'x 395, 397 (6th Cir. 2002) (citing *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 599 (6th Cir. 2001)). "There is no duty to instruct an experienced seaman on matters which are within common sense, or to remind him of what he already knew of should have known." *Manu v. United States*, 323 F. Supp. 3d 1346,

21

1351 (S.D. Ala. 2018) (quotation marks and citation omitted). "Additionally, Defendant and Plaintiff are held to the same standard o[f] care. *Both* are obligated to act with ordinary prudence." *Id.* (emphasis added, citing *Pettis v. Bosarge Diving, Inc.*, 751 F. Supp. 2d 1222, 1241-42 (S.D. Ala. 2010)).

After negligence (duty and breach) is proven, the plaintiff need not establish proximate causation but must only show that the shipowner's negligence is the cause in whole or in part of his injuries. *Churchwell*, 444 F.3d at 907-08 (citation omitted). "In essence, there is a reduced standard of causation between the shipowner's negligence and the seaman's injury." *Rutherford*, 28 F. App'x at 397. Because seamen are considered wards of admiralty and the court, the Jones Act is interpreted broadly and liberally construed for their protection. *See Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 425-26 (1939). However, a marine employer is not an insurer of a seaman's well-being, nor is it obligated to provide an accident-proof ship. "Courts have held that as broad as Jones Act liability is, it is not strict liability." *Beech v. Hercules Drilling Co.*, 691 F.3d 566, 576 (5th Cir. 2012) (citing *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) (admonishing that the liberal construction requirement "does not mean the [FELA or the Jones Act are] workers' compensation statute[s]")). "The basis of [] liability is negligence, not the fact that injuries occur." *Gottshall*, 512 U.S. at 543 (citation omitted). Finally,

22

because the comparative negligence doctrine applies in maritime law claims, any negligence on the part of the employee serves only to mitigate damages, not bar his recovery, "unless his negligence is the sole cause of his injuries." *Perkins*, 246 F.3d at 598.

Defendant argues that Plaintiff's Jones Act claim fails as a matter of law for three reasons: (1) Defendant is not liable for an injury that occurs during the performance of ordinary, routine work of a seaman; (2) Defendant did not have notice of the allegedly hazardous condition and have an opportunity to correct it; and (3) Plaintiff's negligence was the sole proximate cause of his injury.

Plaintiff argues in his motion for partial summary judgment that he is entitled to judgment on his Jones Act claim because (1) Defendant did not tell Plaintiff or his supervisor that a backpack was available for Plaintiff to use when bringing the coffee up to the galley; (2) Defendant failed to train Plaintiff on a reasonably safe method for bringing the coffee up the stairs; and (3) Defendant failed to provide proper equipment to Plaintiff to perform this task.

The Court will examine these arguments below.

**1. Whether Defendant breached its duty to provide a safe workplace for Plaintiff**

Defendant argues that it cannot be liable under the Jones Act for Plaintiff's injuries because Plaintiff was injured while performing ordinary, routine work of refilling stores in the galley, which Plaintiff had testified that he performed "always, all the time." (ECF No. 35-1, Pl.'s Dep. at p. 56, PageID.1294.) Plaintiff agreed that there was nothing unusual about the work he was performing at the time of the accident, and that carrying supplies from the engine room locker to the galley was a routine part of his job. (*Id.* at pp. 56-57, 73, PageID.1294-95, 1311.) Defendant cites to *Harrison v. Seariver Maritime, Inc.*, 61 F. App'x 119, 2003 WL 342266, at *5 (5th Cir. 2003), for the proposition that the law recognizes that "there are inevitable hazards – some of a very severe nature – in the calling of those who go down to sea in ships," and that the law does not hold a marine employer liable for injuries that result from those hazards that "have to be borne by those who follow the calling."

The U.S. Fifth Circuit Court of Appeals in *Seariver Maritime* stated:

Because a Jones Act employer is not an insurer of its employee's safety at sea, the employer is not liable when an injury arises solely from the ordinary and normal activities or risk of seamen's work *in absence of proof that the injury complained of was caused by the employer's negligence.*

24

*Seariver Maritime*, 61 F. App'x 119, 2003 WL 342266, at *5 (emphasis added). The plaintiff in *Seariver Maritime* alleged that she suffered an injury to her knee when carrying hoses down stairs with a crewmate as part of her routine work duties and she felt her knee "pop." Following a one-day bench trial, the district court found that the defendant breached a duty to plaintiff because the hose-clearing procedure was not safe. On appeal, the Fifth Circuit Court of Appeals reversed and rendered judgment for defendant. That court found that the defendant/employer did not breach any duty to the plaintiff by requiring her to perform a routine and non-hazardous task utilizing a safe procedure, "even when a safer procedure might exist" (*e.g.*, carrying lengthy hoses down the stairs instead of lowering them down). *Id.* The court noted that "the vessel was well-maintained; the stairs were properly built and maintained; lighting was adequate; hand rails and non-skid surfaces were available for her protection; and the stairs were stable." *Id.* at *6. The court further found that the defendant's failure to conduct a job hazard analysis "for this routine, non-hazardous task did not violate [defendant's] duty to exercise ordinary care," and that the record does not demonstrate that the plaintiff's stair-use was unnecessary, excessive, or over a prolonged period of time. *Id.* at *7. Simply put, the plaintiff failed to establish, at trial, that the defendant breached any duty owed to plaintiff.

25

Plaintiff here argues that, unlike the plaintiff in *Seariver Maritime*, he does offer proof, as laid out in his motion for partial summary judgment, that his injury was caused by Defendant's negligence, where Plaintiff argues that Defendant was negligent, not just because Plaintiff was required to perform the routine task of bringing supplies from the engine room locker to the galley, but because (1) Defendant did not tell Plaintiff or his supervisor that a backpack was available to carry supplies; (2) Defendant did not provide proper training for bringing coffee up the ladder; and (3) Defendant did not provide Plaintiff with the proper equipment to perform this task. Plaintiff argues that he has presented evidence that it was unsafe for him to have carried the coffee up the ship's stairs "in only the flimsy cardboard container provided to him, but that was his only permitted option," and thus he has presented proof that his injury was caused by Defendant's negligence. (ECF No. 31, Pl.'s Resp. at PageID.805-06.)[3]

---

[3] Plaintiff also contends in his Response brief that his negligence claim is based in part on his claim that he was "rushed." (ECF No. 31, Pl.'s Resp., PageID.805.) However, this contention is in direct conflict with Plaintiff's testimony at his deposition that he was not in a hurry, or told to rush, at the time of the accident, and that there was nothing preventing him from making multiple trips to carry the supplies to the galley. (ECF No. 35-1, Pl.'s Dep. at p. 78, PageID.1316.) Plaintiff has failed to present any evidence supporting a claim that he was "rushed."

The Court finds that Plaintiff fails to present any summary judgment evidence that Defendant breached a duty to Plaintiff. Plaintiff contends that Defendant was negligent in not providing him with the proper training and proper equipment to safely perform his duties. However, even if Plaintiff was not trained *specifically* as to how to carry coffee cans up the ship's stairs to the galley, he admits that he did received training on how to carry items up and down ship stairs, and that he was trained to always keep one hand on the rail while carrying something up or down stairs. (ECF 35-1, Pl.'s Dep. at pp. 36-38 ("If I am carrying something it is necessary that I will use one hand to carry that stuff and I use this, the rail holding on my other hand."), 104-05, PageID.1274-76, 1342-43.) Thus, Plaintiff did receive training as to how to perform this routine task. Plaintiff's supervisor, Lawes, similarly testified that Plaintiff was trained to "keep one hand on the rail" when "bringing stuff up the stairs, lifting a box up." (ECF No. 35-2, Lawes Dep. at p. 49, PageID.1411.) And, Defendant's liability expert, Captain Brian Hall, testified that "one of the most basic safety rules that [mariners] learn at the commencement of maritime training" is "one hand for yourself, one hand for the ship." (ECF No. 35-4, Hall Dep. at pp. 24-25, PageID.1572-73.) There was no duty to instruct Plaintiff, an experienced seaman, how to carry *specific items* up stairs when those items are not hazardous, or to remind him of what he already knew or should have known. *See Colombo v. Texas Co.*, 140

27

F. Supp. 496, 498 (S.D.N.Y. 1956) ("The Jones Act does not repeal the laws of common sense, nor does it mean that seamen are to be treated as infants in the work assigned to them.").

In addition, there is no evidence that Plaintiff was injured by any equipment malfunction, broken equipment, or other impact. While Plaintiff contends in his motion that the box with the coffee was "flimsy," he testified at his deposition that there was nothing wrong with the box containing the coffee jars. (ECF No. 35-1, Pl.'s Dep. at pp. 78-79, PageID.1316-17.) The box was not broken or falling apart or too heavy for Plaintiff to carry but was the same as it has always been. (*Id.*) Plaintiff fails to provide any summary judgment evidence that the box containing the coffee jars was not reasonably fit. Rather, Plaintiff was performing the ordinary tasks of a Steward's Assistant in bringing supplies to the galley, which task he testified he performed routinely without incident or injury. *See Ahmed v. Port City Marine Servs., Inc.*, No. 15-13037, 2018 WL 440993, at *5-6 (E.D. Mich. Jan. 16, 2018) (Hood, C.J.) (noting plaintiff was injured – shoveling cement spillage and using a sledgehammer – which were standard tasks of hard work plaintiff had to perform as part of his job, not inherently dangerous tasks, and not because of negligence attributed to defendant).

Plaintiff's contention that he was not told that a backpack was available to carry supplies is not an issue because the Court finds that method used in this case of carrying supplies up to the galley with one hand while keeping the other hand on the rail, as Plaintiff testified he routinely did, was safe, because "[o]rdinary prudence is exercised when a safe procedure is used for a routine task, even when a safer procedure might exist." *Seariver Maritime*, 61 F. App'x 119, 2003 WL 342266, at *5 (collecting cases). In other words, that a backpack could have been used to transport the coffee, alone, does not render the current method of carrying the coffee unsafe or unsuitable. As stated above, Plaintiff, his supervisor, and experts have testified that it is routine to carry supplies up and down the stairs on a ship, and that the proper procedure is to keep one hand on the rail and one hand holding the item.

Further, Plaintiff testified that the stairway lighting was good and that there was nothing wrong with the stairs themselves. (ECF No. 35-1, Pl.'s Dep. at pp. 49, 81, PageID.1287, 1319.) Rather, Plaintiff was injured when, contrary to his training, he chose to let go of the railing with his left hand to try to secure the box he was carrying in his right hand. (*Id.* at pp. 83-84, 105-06, PageID.1321-22, 1343-44.) Thus, like in *Seariver Maritime*, the Court finds that there was no duty to warn Plaintiff of an unsafe condition, as one did not exist.

Thus, the Court finds that Plaintiff has failed to produce any summary judgment evidence that Defendant breached its duty to Plaintiff to provide a safe workplace. *See Rutherford*, 28 F. App'x at 397 ("[E]ven under the Jones Act, summary judgment is appropriate where plaintiff fails to present evidence showing a genuine issue of material fact as to negligence.") (citing *Doty v. Ill. Cent. R.R. Co.*, 162 F.3d 460, 463 (7th Cir. 1998) (relaxed evidentiary standard does not require a trial when no evidence offered to support an inference of negligence)). While the Sixth Circuit Court of Appeals has made clear that "courts should exercise special care in considering summary judgment in Jones Act cases which require a very low evidentiary threshold for submission to a jury," *Daughenbaugh v. Bethlehem Steel Corp., Great Lakes Steamship Div.*, 891 F.2d 1199, 1207 (6th Cir. 1989) (internal citations omitted), a "[p]laintiff must offer 'more than a scintilla of evidence in order to create a jury question on the issue … but not much more.'" *Churchwell*, 444 F.3d at 903 (internal citation omitted). Plaintiff has not offered such sufficient evidence. "A vessel owner will not be held liable if a job could have been performed with reasonable safety, but the plaintiff was injured because he did it in an unsafe manner." *Manu*, 323 F. Supp. 3d at 1352 (quotation marks and end citation omitted). That is what happened here.

30

## 2. Whether the Defendant had notice and an opportunity to correct the allegedly hazardous condition

Defendant also argues that it is entitled to summary judgment on Plaintiff's

Jones Act negligence claim because Plaintiff cannot produce evidence that

Defendant had reason to foresee that Plaintiff was at risk of being injured. Defendant

contends that before an employer can be held negligent under the Jones Act, an

injury must be foreseeable, and that foreseeability requires actual or constructive

notice of a dangerous condition and an opportunity to correct it, citing *Perkins*, 246

F.3d at 599; *Rutherford*, 28 F. App'x at 397. Defendant argues that Plaintiff was

performing normal, routine tasks at the time of the November 5, 2020, accident, and

that he had never raised any concern to anyone about any unsafe conditions or

practices:

> Q:   [by Defendant's attorney] Did you ever complain to anyone,
> officers, office, union, coast guard, anyone about any aspect of
> your work at American Steamship Company?
>
> A:   No, I did not.

(ECF No. 35-1, Pl.'s Dep. at p. 90, PageID.1328.) Defendant states that Plaintiff was

working alone at the time of the accident and there is no evidence that Defendant

had notice of the alleged hazard and no evidence that it had an opportunity to correct

any alleged issues.

31

Plaintiff recognizes that the Sixth Circuit stated in *Perkins v. American Electric Power Fuel Supply, Inc.*, 246 F.3d 593, 599 (6th Cir. 2001), that "[t]here must be some evidence from which the trier of fact can infer that the owner either knew, or in the exercise of due care, should have known of the unsafe condition." Plaintiff argues that there is evidence in this case to infer that Defendant knew, or should have known, of the unsafe condition because Plaintiff's supervisor, Chief Cook Lawes, had seen Plaintiff carrying a box of coffee "into the galley," and he never said anything about it. (ECF No. 35-1, Pl.'s Dep. at pp. 106, 119, PageID.1344, 1357.) Plaintiff argues that this constitutes actual and constructive notice to Defendant.

However, Plaintiff fails to present any evidence that carrying the coffee was inherently dangerous or that Lawes, or anyone else for that matter, saw him carry six cans of coffee – or indeed any other supplies – up the ship's stairs; he only states that Lawes saw him carry a box of coffee "into the galley." (ECF No. 35-1, Pl.'s Dep. at pp. 106, 119, PageID.1344, 1357.) (ECF No. 35-2, Lawes Dep. at pp. 40-41, PageID.1402-03 ("He never explain to me that before he has a problem taking the coffee up the stairs[.]").) Lawes testified in his deposition that he knew Plaintiff would go down to the engine room and bring a box of coffee up to the galley about once a week, as part of his regular job duties. (ECF No. 35-2, Lawes Dep. at pp. 19-

32

20, PageID.1381-82.) Lawes agreed that the "proper job procedure" was to climb the stairs with one hand on the railing and one hand carrying the coffee box, or other supplies. (*Id.* at p. 33, PageID.1395.) Plaintiff has presented no summary judgment evidence that if he had followed this procedure and kept one hand on the railing he would have fallen down the stairs and, as stated above, Defendant "will not be held liable if a job could have been performed with reasonable safety, but [Plaintiff] was injured because he did it in an unsafe manner." *Manu*, 323 F. Supp. 3d at 1352.

"It is a fundamental principle that, under the Jones Act, an employer 'must have notice and the opportunity to correct an unsafe condition before liability will attach." *Perkins*, 246 F.3d at 599 (quoting *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993)). "'There must be some evidence from which the trier of fact can infer that the owner either knew, or in the exercise of due care, should have known of the unsafe condition.'" *Id.*

The Court finds that Plaintiff has failed to provide summary judgment evidence to show that Defendant knew or should have known of any possible unsafe task associated with Plaintiff's routine retrieval of coffee from the engine room locker to the galley. Plaintiff has failed to present any evidence that it is inherently dangerous to climb a ship's stairs while carrying something. Indeed, the Court can assume from the sworn deposition testimony in this case that this task is routinely

33

performed by all seaman while aboard a ship. There is evidence that Plaintiff was trained to carry supplies keeping one hand on the rail and one hand carrying the supply, and that this is a task that Plaintiff routinely and repeatedly performed safely during his ten year tenure as a mariner.

Plaintiff likewise has presented no summary judgment evidence that Defendant knew or should have known that specifically carrying coffee from the engine room locker to the galley was dangerous or unsafe. Plaintiff testified that bringing supplies from the engine room locker to the galley, including the box of coffee, was a task he performed "[a]lways, all the time." (ECF No. 35-1, Pl.'s Dep. at pp. 54, 56, 61. PageID.1292, 1294, 1299.) Plaintiff testified that there was nothing wrong with the box itself. *See Perkins*, 246 F.3d at 599 ("Plaintiff himself inspected the ratchet prior to using it and did not detect any defects" and thus "[a]bsent evidence sufficient to show that Defendants knew or should have known that the ratchet was defective, Plaintiff has failed to establish that Defendants breached a duty to protect Plaintiff from a foreseeable risk."). There is no evidence that Plaintiff or any other employee made Defendant aware of any past injuries incurred while performing this task (carrying coffee up the stairs), or that such a task was dangerous. Plaintiff has presented no summary judgment evidence that Defendant should have foreseen that, contrary to his admitted training, Plaintiff would let go of the railing

34

while ascending the stairs to try to "catch" the box of coffee. In other words, "Plaintiff has not produced any evidence that Defendant had reason to foresee that Plaintiff was at risk of suffering the injury he did while performing tasks that Plaintiff and others had performed routinely without incident. There is no evidence that Plaintiff or any other employee had made Defendant aware of any injuries suffered performing such tasks – or that such tasks were dangerous." *See Ahmed*, 2018 WL 440993, at *5 (noting that plaintiff was performing ordinary tasks of shoveling cement and using a sledgehammer, which "were standard tasks of hard work Plaintiff had to perform as part of his job."); *Johnson v. Grand Trunk W. R.R., Inc.*, No. 07-CV-11129, 2008 WL 283703, at *5 (E.D. Mich. Jan. 31, 2008) ("[I]f an employer has never received a complaint or report of an injury, courts have found that a future injury is not foreseeable.") (citing *McKennon v. CSX Transp., Inc.*, 897 F. Supp. 1024, 1028 (M.D. Tenn. 1995) (holding injury not foreseeable where plaintiff had worked with spike mauls for 20 years and had never experienced shoulder problems prior to his injury nor heard of such an injury); *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999) (finding it unforeseeable that a seaman would fail to duck when going through a doorway, which "presumably he had gone through hundreds of times before without incident.")).

Accordingly, the Court finds that Plaintiff has failed to satisfy his burden to set forth any evidence that Defendant had a reason to foresee that Plaintiff was at risk of suffering the injury that he did while performing his routine and ordinary duties as a Stewards Assistant. *See Rutherford*, 28 F. App'x at 397-98 (finding plaintiff failed to show that a back injury was a foreseeable risk from one person lifting a steel cable because there is no evidence that plaintiff or any crewman brought the issue to defendant's attention); *Manu*, 323 F. Supp. 3d at 1352 (agreeing that "there is no duty to instruct Plaintiff, an experienced seaman, on matters within common sense, or to remind him of what he already knew or should have known.").

The Court therefore finds that Plaintiff has failed to present evidence that Defendant breached its duty to Plaintiff to maintain a safe workplace, or that his accident and injury were foreseeable. "[E]ven under the Jones Act, summary judgment is appropriate where plaintiff fails to present evidence showing a genuine issue of material fact as to negligence." *Rutherford*, 28 F. App'x at 397 (citing *Doty*, 162 F.3d at 463 (relaxed evidentiary standard does not require a trial when no evidence offered to support an inference of negligence)). Like in *Rutherford*, Plaintiff here "presented no evidence that this was anything more than an unfortunate injury suffered during the execution of a frequent, routine duty of a deckhand. The mere fact of injury is not sufficient." *Id.* at 400 (citation omitted).

36

### 3. Whether Plaintiff's negligence was the sole proximate cause of his accident

Defendant further contends that Plaintiff is barred from recovery for his Jones Act claim because his conduct forms the "sole proximate cause" of his injuries, citing *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 351 (6th Cir. 2002), as stating that "[i]f the employee's own negligence was the sole proximate cause of the accident, then it is proper to conclude that employer negligence played no role in causing the injury." *See also Johnson v. Grand Trunk W. R.R., Inc.*, 2008 WL 283703, at *3 (granting summary judgment to employer because employee's conduct was the sole proximate cause of his injury).

Defendant explains that in *Johnson*, the plaintiff brought a claim of negligence under the FELA after he caught his toe on the end of a bundle of railroad ties, tripped, and fell. *Id*. at *1. The *Johnson* defendant filed a motion for summary judgment, arguing that undisputed facts conclusively establish that plaintiff's conduct was the sole proximate cause of his injuries, and that the plaintiff could not establish that his injury was foreseeable. *Id*. at *2. In holding that the railroad was entitled to summary judgment, the court stated that a plaintiff must offer more than speculation for his claim to survive a motion for summary judgment. *Id*. at *4. The Court recognized that (1) the railroad ties were located in an area with ample walking room, (2) the

railroad ties had been in the same location for a long period of time, (3) the plaintiff was aware of their location for at least several months, and (4) the railroad never received any complaints or reports of injuries from the plaintiff or any other employee. *Id*. at *5

Defendant argues that, like the *Johnson* plaintiff, Plaintiff's conduct here is the sole proximate cause of his injury. In this case, Plaintiff alone decided how to restock the galley supplies, including making the choice to carry six coffee cans at one time up the stairs. (ECF No. 35-1, Pl.'s Dep. at pp. 57-58, 60-61, PageID.1295-96, 1298-99.) Defendant states that Plaintiff offers nothing more than speculation that some additional training would have prevented his accident from happening. Defendant contends that the only evidence in the record as to the proximate cause of the alleged accident is Plaintiff's own conduct in choosing to let go of the railing to try to save the coffee instead of himself. Plaintiff could have let the box go and retained his hold of the handrail, as he was trained to do, but did not.

Plaintiff argues in his Response brief only that this argument is "willfully obtuse" and that he has presented evidence, in his motion for partial summary judgment, that Defendant was negligent and that its negligence played "any part, however slight" in causing Plaintiff's injury.

The comparative negligence principle applies to negligence actions under the Jones Act, and thus "any negligence on the part of the employee operates only to mitigate the damages due to the employee *unless his negligence is the sole cause of his injuries*." *Perkins*, 246 F.3d at 598 (emphasis added) (citing *Jacob v. City of New York*, 315 U.S. 752, 755 (1943)). "Causation does not equal breach; they are separate elements, each of which must be proven." *Rutherford*, 28 F. App'x at 399 (citing *Zarecki*, 914 F. Supp. at 1575). As discussed above, the Court finds that Plaintiff has failed to present evidence that Defendant breached its duty to Plaintiff to maintain a safe workplace, or that his accident and injury were foreseeable. Plaintiff thus has failed to produce some evidence of negligence.

But even if, *arguendo*, the Court found that Plaintiff did present sufficient evidence such that a reasonable juror could conclude that Defendant's failure to train Plaintiff or failure to provide him with proper equipment to transport goods to the galley created an unsafe workplace, and that the risk of employee injury as a result of this failure was foreseeable, Plaintiff would still be required to show that this negligence played at least a slight part in producing his injury. *See Perkins*, 246 F.3d at 598.

The Court finds that Plaintiff has failed to make such a showing. He admits he was trained to keep one hand on the rail when carrying something on the ship's

39

stairs, and that the accident occurred when, contrary to that training, he let go of the rail. Plaintiff is not excused from the exercise of common sense when acting as a seaman. Rather, "Defendant and Plaintiff are held to the same standard o[f] care" and "[b]oth are obligated to act with ordinary prudence." *Manu*, 323 F. Supp. 3d at 1351. "The Jones Act does not repeal the laws of common sense, nor does it mean that seamen are to be treated as infants in the work assigned to them." *Colombo*, 140 F. Supp. At 498. Plaintiff here has presented nothing more than that this was an unfortunate accident.

Accordingly, for all the reasons discussed above, the Court grants Defendant summary judgment on Plaintiff's Jones Act claim, and this claim is dismissed with prejudice.

### C. Plaintiff's Unseaworthiness Claim (Count II)

Under the common law of admiralty, "'a ship owner owes to the seaman employed on its vessels an absolute, nondelegable duty to provide a seaworthy vessel.'" *Daughenbaugh*, 891 F.2d at 1207 n.3 (quoting *Harbin v. Interlake S.S. Co.*, 570 F.2d 99, 103 (6th Cir. 1978)). "A vessel is unseaworthy if the vessel and its appurtenances are not 'reasonably fit for their intended use.'" *Churchwell*, 444 F.3d at 904 (quoting *Mitchell*, 362 U.S. at 550). "Defective gear, an unfit or understaffed crew, or the use of an improper method of storage or unloading cargo all render a

40

vessel unseaworthy." *Id.* (quoting *Morales v. City of Galveston,* 370 U.S. 165, 170 (1962)). "The standard is not perfection, but reasonable fitness," and an owner is not required to provide "an accident-free ship." *Mitchell*, 362 U.S. at 550. As one Circuit Court of Appeals explained, "a seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery." *Haughton v. Blackships, Inc.*, 462 F.2d 788, 789 (5th Cir. 1972) (internal quotation marks omitted).

This duty is "distinct and separable" from an employer's duty under the Jones Act and requires no finding of negligence. *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 774 (9th Cir. 1981); *see also Perkins*, 246 F.3d at 602 n. 6. A ship owner "is strictly liable for personal injuries caused by his or her vessel's unseaworthiness." *Churchwell*, 444 F.3d at 904. Importantly, "[u]nseaworthiness extends not only to the vessel but to the crew." *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 727 (1967); *see also Hercules Carriers, Inc. v. Fla. Dep't of Transp.*, 768 F.2d 1558, 1565-66 (11th Cir. 1985) (citing *Tug Ocean Prince, Inc. v. U.S.*, 584 F.2d 1151, 1155 (2d Cir. 1978)) ("Because the shipowner has a non-delegable duty to provide a competent master and crew, unseaworthiness can be caused by insufficient manning of the vessel or an incompetent crew."). However, the United States Supreme Court has stated that an "isolated personal negligent act" occurring on a

vessel does not give rise to a claim for unseaworthiness because that would "subvert the fundamental distinction between seaworthiness and negligence." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 500 (1971). Thus, a crewmember's "single and wholly unforeseeable" act of negligence is not sufficient to give rise to liability of the shipowner for unseaworthiness. *Id.* at 498, 500 (noting that unseaworthiness is a condition which must be established with more than a single act).

To prevail on an unseaworthiness claim, a plaintiff must prove: (1) that a "vessel and its appurtenances were not 'reasonably fit for their intended use'" and (2) that the "vessel's unseaworthy condition was the proximate cause of his or her injuries." *Churchwell*, 444 F.3d at 904 (internal citation omitted); *see also Perkins*, 246 F.3d at 602. Unseaworthiness proximately causes an injury if it "played a substantial part in ... causing the injury" and "the injury was either a direct result or a reasonably probable consequence of unseaworthiness." *Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1463-66 (6th Cir. 1993) (internal citation omitted). An owner need not have actual or constructive notice of the unseaworthy condition to be liable. *Mitchell*, 362 U.S. at 549. An owner is no less liable for unseaworthy conditions that "aris[e] after the vessel leaves her home port" or for

unseaworthy conditions that may be temporary. *Id.* at 568-69; *Usner*, 400 U.S. at 498.

Defendant argues that Plaintiff admitted in his deposition that the condition of the *H. Lee White* and the actions, or inactions, of its crew did not cause or contribute to his accident, and that the record instead establishes that it was Plaintiff who made the decision of what supplies to carry and how to carry them. Defendant contends therefore that Plaintiff has no evidence that the vessel or its crew were anything other than fit for their intended purpose, or that they were the proximate cause of his accident.

Plaintiff argues, both in his Motion for Partial Summary Judgment, and in his Response to Defendant's Motion for Summary Judgment, that the *H. Lee White* was unseaworthy because (1) the carton that Defendant provided for bringing up the coffee to the galley was not reasonably fit for its intended use; (2) Defendant failed to provide Plaintiff with the proper equipment (i.e., the backpack); (3) Plaintiff was instructed to use unsafe work methods in bringing the coffee upstairs; and (4) Plaintiff's supervisor, Chief Cook Lawes, was himself improperly trained with respect to this task.

In this case, as discussed above, there is no summary judgment evidence that there was anything wrong with the box containing the coffee or that it was not

reasonably fit for its intended use. Plaintiff testified that it was the same as he had always used to carry coffee to the galley, and he never had an issue using this procedure. The mere suggestion that "better" or "safer" methods could have been implemented for this task, such as the use of a backpack instead of carrying the coffee by hand, is insufficient to support Plaintiff's claim of unseaworthiness, where nothing in the record indicates that carrying supplies up the ship's stairs to the galley with one arm is unseaworthy as a general practice. *See Aljalham v. American Steamship Co.*, No. 08-14043, 2010 WL 777331, at *8-9 (E.D. Mich. Mar. 4, 2010) (noting that "safety procedures and policies were in place that would render loading groceries or other packages reasonably safe") (citing *Reed v. MV Foylebank,* 415 F.2d 838, 839 (5th Cir. 1969) (holding that although loading vessel could have been done with a forklift or made easier by using other equipment, failure to use mechanical devices and use of hand hooks to load 1,100 pound crates onto vessel did not render vessel unseaworthy)).

Plaintiff testified that he chose which supplies to bring from the locker to the galley, and how to bring them up. *See Ahmed*, 2018 WL 440993, at *6 (plaintiff's unseaworthiness claim defeated on summary judgment where the shovel and sledgehammer were not defective, and plaintiff controlled how much he lifted and how he used the sledgehammer). Further, both Plaintiff and his supervisor testified

44

that Plaintiff was trained to keep one hand on the rail while carrying supplies up the ship's stairs. Plaintiff, in contravention of that training, took his hand off the rail to try to "catch" the coffee from falling. Plaintiff's action in taking his hand off the rail while climbing the ship's stairs was the proximate cause of his accident. "To hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence[.]" *Usner*, 400 U.S. at 500 (noting in that case that it would be "erroneous … to hold the shipowner liable for a third party's single and wholly unforeseeable act of negligence."); *Rogers v. Eagle Offshore Drilling Servs., Inc.*, 764 F.2d 300, 303 (5th Cir, 1985) (holding that "[a]n isolated personal negligent act occurring on the vessel [does] not render the vessel unseaworthy[.]").

Thus, the Court finds that there is insufficient evidence from which Plaintiff can show that the process of carrying the coffee from the engine room locker to the galley rose to the level of being unseaworthy, or indeed, that the process itself played a "substantial part" in bringing about the alleged injury. Rather, the record describes, at best, a single incident of operational negligence, by Plaintiff, which does not itself establish unseaworthiness. *See Franklin v. Doric Shipping & Trading Corp.,* 357 F. Supp. 1132, 1135 (W.D. La. 1972) (holding that where a previously satisfactory method of loading vessel was rendered unsafe because of the negligent act of

plaintiff and/or fellow employees, the act during its commission was "operational negligence" and, since that negligence did not render the vessel instantaneously unseaworthy, the vessel owner was not liable for the accidental injury sustained by plaintiff), *aff'd*, 477 F.2d 594 (5th Cir. 1973); *Smith v. Olsen & Ugelstad,* 324 F. Supp. 578, 582 (E.D. Mich. 1971) (holding that survivor of deceased longshoreman could not recover from shipowner where longshoreman's death after being crushed by a falling crate was caused by "instant unseaworthiness resulting from the operational negligence of the stevedoring contractor or his servants"). "It is not sufficient to simply pose the question of unseaworthiness," *Rutherford*, 28 F. App'x at 400, and "the mere fact that an accident occurs and a seaman is injured while using an appurtenance in the performance of his duties cannot, without more, establish that a vessel is unseaworthy." *Mosley v. Cia. Mar. Adra, S.A.*, 314 F.2d 223, 228-29 (2d Cir. 1963); *Golden v. City of New York*, No. 14 Civ. 2229, 2015 WL 2237540, at *5-6 (S.D.N.Y. May 14, 2015).

Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's unseaworthiness claim and this claim is dismissed with prejudice.

### D. Maintenance and Cure Claim (Count III)

"Maintenance and cure is a centuries old remedy under the general maritime law." *Spencer v. Grand River Nav. Co.*, 644 F. App'x 559, 563 (6th Cir. 2016) (citing

46

*Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979)). A shipowner's duty to provide maintenance and cure "arises regardless of fault and whether or not employment on the ship actually caused the seaman's injury." *Cunningham v. Interlake S.S. Co.*, 567 F.3d 758, 761 (6th Cir. 2009).

"Maintenance and cure is [a shipowner's obligation] to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Spencer*, 644 F. App'x at 563 (quoting *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962)) (brackets in original). "Maintenance is a daily stipend for living expenses, whereas cure is the payment of medical expenses." *Smith v. Omega Protein, Inc.*, 459 F. Supp. 3d 787, 794 (S.D. Miss. 2020) (quoting *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015)). "Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman ... until the point of 'maximum cure.'" *Id.* (quoting *Barto v. Shore Constr., L.L.C.*, 801 F.3d 465, 476 (5th Cir. 2015)). "Maximum cure occurs 'when it appears probable that further treatment will result in no betterment of the seaman's condition.'" *Id.* (quoting *Barto*, 801 F.3d at 476).

To recover for maintenance and cure, a plaintiff must demonstrate that "(1) he was working as a seaman, (2) he became ill or injured while in the vessel's

service, and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury." *West v. Midland Enters., Inc.*, 227 F.3d 613, 616 (6th Cir. 2000). The shipowner's liability for maintenance and cure is to be liberally construed and ambiguities resolved in favor of the seaman. *Vaughan*, 369 U.S. at 531-32.

Defendant argues in its motion for summary judgment that Plaintiff has not presented any evidence that there are maintenance benefits to which he is legally entitled but which Defendant has not paid, and that Defendant is therefore entitled to judgment as a matter of law on the maintenance aspect of Plaintiff's claim in Count III of his Complaint. (ECF No. 28, Def.'s Mot. at p. 20, fn.10, PageID.623.) Plaintiff does not address, much less oppose, this argument, and the Court therefore finds that Plaintiff is not entitled to any maintenance benefits beyond that to which he has already received.

Defendant contends that the "crux" of Plaintiff's maintenance and cure claim pertains to the cost of Plaintiff's chosen nurse case manager, Ms. Busen. Defendant argues that the services provided by a nurse case manager, such as Ms. Busen, are outside the scope of the cure obligation. Defendant contends that a maritime employer may retain a nurse case manager to oversee cure claims, but that there is no legal authority holding nurse case management services to be a component of the cure obligation. Defendant asserts that a nurse case manager's role is administrative

48

(coordinating a seaman's medical care, scheduling appointments, etc.), not medical or therapeutic, because the nurse case manager does not examine the seaman, prescribe medication, or provide any actual medical treatment to Plaintiff. While Defendant appointed Nikki Cremeans from MSS as Plaintiff's nurse case manager and care coordinator, it argues that this "voluntary appointment" is not an acknowledgement that such services are a form of medical treatment.

Defendant continues that, even if nurse case management services did fall within the scope of the cure obligation, Defendant fulfilled that obligation by providing Nurse Cremeans at no cost to Plaintiff. Defendant argues that Plaintiff cannot refuse those services and then seek to hold Defendant to payment for Plaintiff's own handpicked nurse case manager.

Plaintiff responds that he previously addressed these issues in his prior September 29, 2022, motion to present evidence of the cost of his nurse case manager to the jury as part of his cure claim, at ECF No. 17, and he seeks to incorporate those arguments by reference. On February 1, 2023, this Court issued an Opinion and Order denying that motion as procedurally improper and premature, stating that the Court would address the legal issues raised when it decides Defendant's properly filed motion for summary judgment. (ECF No. 41, Order.) In his prior motion, and in his Response brief to Defendant's motion for summary

judgment, Plaintiff concedes that while he has found no cases addressing case management services in the context of a claim for cure, he contends that the doctrine of cure encompasses case management services in general, relying on *In re Gulf Pride Marine Service, Inc.*, No. 96-1104, 1997 WL 118394 (E.D. La. Mar. 14, 1997). However, a review of that case reveals that the Louisiana district court simply included the phrase "case manager" in a list of items of future expenses awarded to the plaintiff as part of her general damages award for her Jones Act negligence and general maritime unseaworthiness claims. *See id.* at *9. That award was not part of the maintenance and cure claim, which the Louisiana district court addressed separately. *Id.* at *14. This Court has similarly found no case awarding nurse case management services as a component of a plaintiff's cure remedy.[4]

---

[4] Plaintiff argued in his prior motion that the Court should look to caselaw interpreting the Michigan No-Fault Act as persuasive authority that nurse case management services are a component of the general maritime cure obligation. (ECF No. 17.) However, the Court finds that the Michigan No-Fault Act, a statutory scheme enacted for the purpose of regulating the business of automobile insurance in Michigan, is limited and inapplicable to this maritime case. *See Muci v. State Farm Mut. Auto. Ins. Co.*, 478 Mich. 178, 187-88 (2007) (noting that the Michigan No-Fault Act's guarantees and enforcement measures "are found within the four corners of the act."); *see id.* at 187 (noting that the No-Fault Act provides for recovery of "reasonably necessary medical care, recovery, and rehabilitation, *as well as some incidental expenses*.") (emphasis added).

The Court finds that the nurse case manager services provided by Plaintiff's personally-selected case manager, Ms. Busen, do not fall within the cure obligation of general maritime law. As stated above, "[c]ure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman ... until the point of 'maximum cure.'" *Omega Protein*, 459 F. Supp. 3d at 794. A review of Ms. Busen's invoices for her services provided to Plaintiff shows, to the extent any detail is provided, that she did not examine Plaintiff, prescribe him medication, or provide any medical treatment. Rather, she communicated with Plaintiff's doctors, confirmed appointments, scheduled appointments, obtained Plaintiff's medical records, summarized Plaintiff's medical records, and attended appointments with his medical providers. (See ECF No. 28-6, Busen Invoices.) These were administrative duties provided by Ms. Busen to Plaintiff, and do not constitute medical care or treatment.

In any event, the Court finds that, even if nurse case management services could be considered to be within the scope of the cure obligation, Defendant satisfied that obligation by providing nurse case management services to Plaintiff through MSS and Nurse Cremeans, at no cost to Plaintiff. Courts have long held that the provision of free medical care to an injured or ill seaman discharges a maritime employer's cure obligation. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 737

(1961) (stating that the "duty to provide maintenance and cure may ordinarily be discharged by issuing a master's certificate carrying admittance to a public hospital, and that a seaman who refuses such certificate *or the free treatment to which it entitles him without just cause cannot further hold the shipowner to his duty to provide maintenance and cure*.") (emphasis added). Courts have similarly held that the provision of medical care to mariners eligible for Medicare and Medicaid, and under a union medical and hospitalization plan, satisfies the cure obligation. *See Moran Towing & Transp. Co. v. Lombas*, 58 F.3d 24, 25-26 (2d Cir. 1996) (holding that the availability of free surgical care to an injured seaman under the Medicare program satisfies the vessel owner's obligation to furnish cure); *Toulson v. Ampro Fisheries, Inc.*, 872 F. Supp. 271, 276-77 (E.D. Va. 1995) (holding "as a matter of law, that Medicare or Medicaid can satisfy a shipowner's duty to cure" because "where a seaman has access to medical care free of charge, thus incurring no out-of-pocket expenses, shipowners have not been required to pay the seaman additional compensation."); *Gosnell v. Sea-Land Serv., Inc.*, 782 F.2d 464, 468 (4th Cir. 1986) (stating that the plaintiff seaman was entitled to no recovery for cure because his medical expenses had already been paid by the union's medical and hospitalization plan).

*Al-Zawkari v. American Steamship Company*, 871 F.2d 585 (6th Cir. 1989), is instructive, In *Al-Zawkari*, the plaintiff seaman took ill on the ship, was hospitalized for several months, and incurred substantial medical expenses. All of the expenses were reimbursed by the plaintiff's insurance company (Blue Cross) or by the Seafarer's Welfare Plan (SWP), a plan fully funded by shipowners to cover the medical expenses of seamen. *Id.* at 586. The plaintiff sought cure benefits in the amount his private insurance had paid, arguing that he alone is entitled to the benefits of his personally funded insurance policy. *Id.* at 588. The district court disagreed and found for the shipowner, concluding that the plaintiff was not entitled to payments in addition to those already received for maintenance and cure. The Sixth Circuit Court of Appeals affirmed and held that the defendant satisfied its cure obligation by providing for the full payment of the seaman's total out-of-pocket "cure" expenses through the shipowner's exclusively funded medical plan (the SWP), and that plaintiff's "voluntary waiver of SWP benefits in favor of Blue Cross coverage precluded him from claiming a right to cure against the defendants." *Id.* at 590 (citing *Dowdle v. Offshore Express, Inc.*, 809 F.2d 259, 265 (5th Cir. 1987) (explaining that a seaman has a duty to mitigate his damages and keep the cost of maintenance and cure to a minimum, and where his employer has tendered free medical care, but the seaman refuses and consults a private physician, the seaman usually forfeits right to

cure)). The Sixth Circuit stated that the "defendant is not liable for the plaintiff's medical expenses because the defendant's contributions to the SWP completely discharged the shipowner's liability." *Id.*

The Court finds, in this case, that Defendant provided Plaintiff with nurse case management services free of charge – essentially paying MSS for its services on behalf of Plaintiff – and that Plaintiff cannot simply refuse those free services and then seek to hold Defendant to the same obligation with respect to Plaintiff's handpicked nurse case management service provider. Defendant therefore has satisfied its cure obligation with respect to this service (to the extent it qualifies as a cure obligation) and the Court grants summary judgment to Defendant on Plaintiff's maintenance and cure claim and dismisses that claim with prejudice.

*Conclusion on following page*

54

## III.   CONCLUSION

For the reasons set forth above, the Court:

(1) **DENIES** Plaintiff's Motion for Partial Summary Judgment (ECF No. 24);

(2) **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 28); and

(3) **DISMISSES** Plaintiff's claims with prejudice.

This is a final order that closes the case.

**IT IS SO ORDERED.**

s/Paul D. Borman_____
Paul D. Borman
United States District Judge

Dated: August 31, 2023